**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

DAVID GIGUERE,                                        Civil Action No.
on his own behalf and
on behalf of all others similarly situated,

     Plaintiff,

v.

PORT RESOURCES INC.

     Defendant.

---

## CLASS AND COLLECTIVE ACTION COMPLAINT

---

Plaintiff, by and through his undersigned counsel, files this Class and Collective Action Complaint for unpaid wages against Defendant Port Resources, Inc.

## STATEMENT OF THE CASE

1.      Plaintiff David Giguere and those similarly situated are currently, or were formerly, employed at various times as Long-Term Staff and/or Therapeutic Live In Staff by Defendant Port Resources Inc. ("Port Resources").  Mr. Giguere and those similarly situated worked for Defendant as live-in caretakers for people with developmental disabilities and behavioral health challenges in Defendant Port Resources residential home settings staffed by professionals around the clock.  Defendant employed Mr. Giguere and those similarly situated to provide direct support services to its clients including, among other things, giving residents medications, making meals and taking residents to appointments. Mr. Giguere was responsible at all times, including throughout the night, for ensuring that those in his care did not leave the premises or do anything that could harm themselves or others.

2.    Defendant scheduled Mr. Giguere to begin his work week as Long-Term Staff and/or Therapeutic Live In Staff on a Thursday and then worked for seven (7) consecutive days — typically with four hour breaks on four of the days — until the following Thursday. Those similarly situated had similar schedules. Defendant required Mr. Giguere and those similarly situated to sleep during scheduled time periods in the residential home setting where they worked. Mr. Giguere and those similarly situated remained on duty as caretakers during this "sleep" time.

3.    This shift was divided into two work weeks. Over the two work week periods the Mr. Giguere and those similarly situated were completely relieved of duty on four days for approximately four hours in each day.

4.    The Defendant failed to compensate the Mr. Giguere and those similarly situated for the "sleep" time even though they were on supervisory duty during that time.

5.    The Defendant violated the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq*., and Maine labor laws guaranteeing prompt payment of wages, 26 M.R.S.A. §§ 621-A *et seq*.

6.    The Defendant's violations of the FLSA, and Maine's wage laws were willful and deliberate, as shown for example by the careful manipulation of the work week calendar.

7.    Mr. Giguere seeks compensation for the Defendant's violations of the FLSA, and Maine's wage laws, on his own behalf and on behalf of all other similarly situated employees of Defendant.

## PARTIES, JURISDICTION, AND VENUE

8.    Plaintiff David Giguere is a resident of Waldo County, Maine.

9.    Mr. Giguere was employed by Defendant on or about May 30, 2014 through August 6, 2015.  Mr. Giguere's FLSA Consent to Sue is annexed hereto as Exhibit 1.

10.     Defendant Port Resources Inc. is a registered Maine nonprofit corporation with a principal business street address of, upon information and belief, 280 Gannett Drive, South Portland, ME.

11.     Upon information and belief one or more officers or employees of Port Resources are personally responsible for the decisions that led to the illegal conduct and/or ultimately controlled the employees' schedule and pay. Mr. Giguere anticipates amending the complaint after discovery clarifies this responsibility.

12.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, this case arising under the laws of the United States.  This action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.

13.     Mr. Giguere requests that this Court exercise supplemental jurisdiction over their claims under the laws of Maine, pursuant to 28 U.S.C. § 1367.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because all the events and omissions giving rise to the claims of the named Plaintiff occurred in the District of Maine, and the Defendant is headquartered, conduct substantial business, and/or reside in the state of Maine.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

### THE DEFENDANT EMPLOYED MR. GIGUERE AND THOSE SIMILARLY SITUATED

15.     Defendant Port Resources manages and provides staffing for twenty-four (24) group homes and supervised apartments serving nearly 100 clients in residential neighborhoods across southern Maine.

16.     On its website, Defendant Port Resources advertises that it provides "24-hour staffing." Further, upon information and belief, Defendant Port Resources is required by

government regulations and/or reimbursement agreements to provide 24 hour staffing at its facilities.

17.    When Mr. Giguere and those similarly situated were on their respective overnight shifts, they were the sole primary caregiver available for their assigned clients.

18.    Mr. Giguere and those similarly situated were employed by Defendant as Direct Support Professional - Long-Term Staff and/or Therapeutic Live In Staff caring for individuals with disabilities in various home residential settings.

19.    Defendant Port Resources has over $500,000 in gross receipts per year.

20.    Defendant Port Resources owned and controlled the residential home setting facilities in which Mr. Giguere and those similarly situated worked. Upon information and belief, no other company had independent access to Defendant's facilities.

21.    Mr. Giguere was employed by Defendant as Long-Term Staff for one of its group homes in Cumberland County, Maine starting on or about May 30, 2014 and continuing through late-summer 2015. Mr. Giguere's employment with Defendant ended on or about August 6, 2015 after he slipped and fell on a wet floor at Port Resources during a shift in mid-July 2015 sustaining knee and low back injuries.

22.    During the night, Mr. Giguere was the only person responsible for the care of those in the home. He was charged with ensuring that none of the consumers under his care left the home or otherwise did anything dangerous. Accordingly, Mr. Giguere had to be alert while he slept so he could wake and pay attention anytime a consumer arose in the night, even if they only did so to use the restroom. Those similarly situated had similar overnight responsibilities.

23.    Defendant Port Resources, by official policy, required Mr. Giguere and those similarly situated to record any instance during an overnight shift when they were awakened to

tend to a consumer for any reason that would be clinically documented, such as for providing medication.

24.     Defendant Port Resources, however, had no mechanism to document (and therefore compensate) Mr. Giguere and those similarly situated when they were awakened for short, but frequent, periods of time listening to or checking on the consumers when no incident requiring clinical documentation occurred, or otherwise when their sleep was frequently interrupted during the night. It was made clear to the Mr. Giguere and those similarly situated in their training that they would not be compensated for any such short periods of time.

25.     Mr. Giguere was paid an hourly rate of $12.75 per hour, but was not paid for the eight hours of "sleep time" when he was nevertheless required to ensure a safe environment. Those similarly situated were similarly paid.

26.     In a typical workweek, Defendant required Mr. Giguere and those similarly situated to be on duty for a shift that ran for seven consecutive days. This shift was divided into two work weeks for compensation purposes so that Thursday, Friday, and Saturday fell into the first week and Sunday, Monday, Tuesday, and Wednesday fell into the second week. Pursuant to this schedule, Mr. Giguere and those similarly situated worked at most four days in a given work week.

27.     Mr. Giguere's hours fluctuated slightly. In this regard, his timecard (annexed hereto as Exhibit 2) for the period ending January 17, 2015 is illustrative. The work started on a Thursday morning and continued through the weekend typically with a four-hour break on Friday. Although Mr. Giguere and those similarly situated were permitted time to sleep, they were still required to be supervising those living in the home. On Monday, Tuesday, and Wednesday Mr. Giguere had an unpaid break in the morning for several hours when he was

completely free of all duties and was not engaged to wait. He would then return and work through the night. Those similarly situated at similar schedules where they were on duty 24 hours per day save four days with roughly four hour breaks during the two work weeks that made up the shift.

28.    A generalized description of the hours of Mr. Giguere's and those similarly situated Mr. Giguere's employment file is annexed hereto as Exhibit 3.

29.    According to numbers calculated by the Workers Compensation Board (for an investigation of the injury sustained by Mr. Giguere on-the-job in July of 2015) Mr. Giguere's total earnings from July 19, 2014 though July 11, 2015 were $35,712.36, with a gross average weekly wage of $686.78.

30.    Mr. Giguere and those similarly situated were not compensated by Defendant for overnight on-duty periods, even though they were legally required to be on duty and were frequently woken up to listen and check in on the clients.  However, if they were forced to get up to tend to a customer they could document the incident in clinical notes and complete a hand punch correction. They were left with the impression from training that they would not be compensated for short periods of time.

31.    Defendant maintained ultimate control over the pay of Mr. Giguere and those similarly situated by determining how much its employees were paid, directly setting their pay rate and setting its scheduling and overtime policies.

32.    In total, Mr. Giguere worked for Port Resources Inc. for approximately sixty (60) weeks, for approximately thirty (30) seven day shifts.

**THE DEFENDANT FAILED TO PAY MR. GIGUERE AND THOSE SIMILARLY
SITUATED FOR ALL HOURS WORKED.**

33.    Defendant required Plaintiffs to sleep on the job premises in the residential home setting and to always be on duty during this time ready to respond to the needs of a client.

34.    Accordingly, under the system maintained by the Defendant, Mr. Giguere and those similarly situated worked and were under the actual operational control of the Defendant for long periods in which they were unable to earn money.

**MR. GIGUERE AND THOSE SIMILARLY SITUATED WERE NOT PAID FOR ALL
HOURS OF OVERTIME.**

35.    Throughout the time period Mr. Giguere and those similarly situated were employed by Defendant, Defendant required them to be present and working as caretakers for their clients for an actual workweek that constituted far more than forty (40) hours per week.

36.    Mr. Giguere and those similarly situated were required to be available to care for any consumer during their overnight shifts.

37.    Defendant only paid Mr. Giguere and those similarly situated for overtime hours at a time and a half the regular rate on an adjusted hourly basis for approximately sixteen (16) of the hours worked beyond forty (40) hours.

**DEFENDANT REFUSED TO CORRECT THEIR FAILURE TO PAY MR. GIGUERE.**

38.    Mr. Giguere, through counsel, demanded all unpaid by certified letter to the Defendant's businesses on January 20, 2015 which were delivered on January 22, 2015.

39.    Defendant have failed to pay Mr. Giguere and those similarly situated within eight days of the pay date for those payments and within eight days of receipt of demand.

## 216(b) COLLECTIVE ACTION ALLEGATIONS

40.    Mr. Giguere asserts his Count I claim under the FLSA pursuant to 29 U.S.C. § 216(b), on behalf of himself and on behalf of all similarly situated employees currently and formerly employed by Defendant.

41.    Pending any modifications necessitated by discovery, the named Plaintiff Mr. Giguere preliminarily defines the "216(b) Class" as follows:

> ALL CURRENT AND FORMER NON-EXEMPT EMPLOYEES WHO WERE NOT PAID ALL OVERTIME HOURS OF WORK

42.    All potential FLSA class Members are similarly situated because, among other things, they were all employees of Defendant and, upon information and belief, all suffered from the same policies of Defendant including:

a.    failing to pay for any sleep hours while on supervisory duty as required by the FLSA; and

b.    failing to pay for those hours at an overtime rate as required by the FLSA

## RULE 23 CLASS ACTION ALLEGATIONS

43.    The named Plaintiff Mr. Giguere re-alleges each of the allegations in the paragraphs above, and incorporates the same herein as though set out at length.

44.    The named Plaintiff Mr. Giguere asserts his Counts II, III, and IV claims as a Fed. R. Civ. P. 23 class action claims on his own behalf and on behalf of a class for which he seeks certification.

45.    Pending any modifications necessitated by discovery, the named Plaintiff Mr. Giguere preliminarily defines the following class:

**Wage Class:**    ALL CURRENT AND FORMER EMPLOYEES THAT WORKED AS LONG-TERM AND/OR THERAPEUTIC LIVE-IN STAFF WHO WERE NOT COMPENSATED FOR ALL HOURS WORKED AND WERE NOT PAID ALL OVERTIME DUE FOR TIME OVER 40 HOURS.

46.    Upon information and belief, the Defendant did not pay the putative Wage Class members all wages due.

47.    The class is so numerous that joinder of all potential class members is impracticable. Mr. Giguere estimates, based on correspondence from the Defendant, that there are 40 current workers in the class. The exact size of the class will be ascertainable from Defendant's records.

48.    There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include: whether Defendant paid their employees for all hours worked and paid all wages due by law when due.

49.    The class claims asserted by the Mr. Giguere are typical of the claims of all of the potential class members. This is an uncomplicated case of unpaid wages that should be mathematically ascertainable from business records and the class claims are typical of those pursued by victims of these violations. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy.

50.    The named Plaintiff Mr. Giguere will fairly and adequately protect and represent the interests of each class. He was both an employee of Defendant and was a victim of the same

violations of law as other class members, i.e., the failure to compensate employees for all hours worked and failure to pay an overtime rate.

51.     The named Plaintiff Mr. Giguere is represented by counsel experienced in wage and hour litigation.

52.     The prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential Class Members that would establish incompatible standards of conduct for Defendant.

53.     Each class member's claim is relatively small. Thus, the interest of potential class members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and the pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

54.     Mr. Giguere is unaware of any members of the putative classes who are interested in presenting their claims in a separate action.

55.     Mr. Giguere is unaware of any pending litigation commenced by members of any of the classes concerning the instant controversy.

56.     It is desirable to concentrate this litigation in one forum.

57.     This class action will not be difficult to manage due to the uniformity of claims among the class members and the susceptibility of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

58.     The contours of the class will be easily defined by reference to payroll documents.

59.     Defendant Port Resources was legally required to create and maintain, pursuant to FLSA and its regulations, including 29 C.F.R. § 516.2 along with analogous law in Maine,

detailed payroll records. Notice will be easily distributed as all members of the putative class are or were recently employed by Defendant Port Resources, who was required to create and maintain records containing the mailing addresses of each such class member.

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT I:**</u>
<u>**BREACH OF THE FAIR LABOR STANDARDS ACT'S (FLSA) OVERTIME**</u>
<u>**REGULATIONS**</u>
<u>**28 U.S.C. §§ 201 ET SEQ**</u>

60.    Mr. Giguere re-alleges and incorporates by reference all previous paragraphs of the Complaint as if fully rewritten herein.

61.    The named Plaintiff Mr. Giguere asserts this claim on behalf of himself and the 216(b) Class.

62.    During all times relevant to this count, the named Plaintiff Mr. Giguere and others similarly situated were employed by Defendant as defined by 29 U.S.C. § 203(g).

63.    The Defendant failed to pay Mr. Giguere and those similarly situated at a time and a half overtime rate for all hours worked in excess of 40 in a week and also failed to fill in the pay gaps for compensable time during those overtime weeks.

64.    During all times relevant to this action, the named Plaintiff Mr. Giguere and others were employed by the Defendant for handling and otherwise working on goods or materials that had been moved in or were produced for interstate commerce.

65.    Defendant Port Resources is an "enterprise" under the FLSA as:

    a.    Defendant Port Resources has annual gross revenues in excess of $500,000 and employed two or more persons, including the named Plaintiff, who handled and worked on materials that had been moved in

11

interstate commerce and/or were being prepared for movement in interstate commerce, and

b.     Defendant Port Resources is engaged in the operation of an institution primarily engaged in the care of the sick, aged, mentally ill or defective who reside on the premises of such institution.

66.    Mr. Giguere and those similarly situated are entitled to unpaid overtime wages, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II:
## BREACH OF MAINE WAGE PAYMENT LAW
## 26 M.R.S. § 626-A

67.    Mr. Giguere incorporates all previous paragraphs.

68.    The named Plaintiff Mr. Giguere asserts this claim on his behalf and on behalf of the Wage Class.

69.    The Defendant employed Mr. Giguere and the Wage Class in their residential group homes for clients with disabilities located throughout Southern Maine.

70.    The Defendant failed to pay Mr. Giguere and the Wage Class for all hours worked as required under 26 M.R.S. § 629 by engaging him and the Wage Class in non-compensatory activities for the benefit of the employer, including but not limited to overnight shifts.

71.    The Defendant failed to pay all wages due Mr. Giguere and the Wage Class on payday as required under 26 M.R.S. § 621-A.

72.    Defendant indisputably owed Mr. Giguere and the Wage Class payment of all wages due.  Such payment was not made within eight days of the due date, nor within eight days of the demand.

73.    Accordingly, the Defendant is liable pursuant to 26 M.R.S. § 626-A for unpaid wages, and, a reasonable rate of interest, costs of suit including reasonable attorneys' fee, and an additional amount equal to twice the amount of unpaid wages as liquidated damages.

**COUNT III**
**BREACH OF MAINE MINIMUM WAGE LAW**
**26 M.R.S. § 670**

74.    Mr. Giguere incorporates all previous paragraphs.

75.    The named Plaintiff Mr. Giguere asserts this claim on his own behalf and on behalf of the Wage Class.

76.    The Defendant employed Mr. Giguere and those similarly situated under 26 M.R.S. §§ 663.

77.    The Defendant failed to pay Mr. Giguere and those similarly situated the minimum wage and overtime under 26 M.R.S. §§ 663 and 664 by failing to pay them for all hours worked and for failing to pay time and a half for all hours worked in excess of 40 in a given week.

**78.**    Accordingly, under 26 M.R.S. § 670 the Defendant is liable to Mr. Giguere and those similarly situated for unpaid wages adjudged to be due, an amount equal to such wages as liquidated damages, and costs of suit including reasonable attorneys fees.

**COUNT IV**
**BREACH OF CONTRACT OR UNJUST ENRICHMENT/QUASICONTRACT**

79.    Mr. Giguere incorporates all previous paragraphs.

80.    The named Plaintiff Mr. Giguere asserts this claim on his own behalf and on behalf of the Wage Class.

81.    The Defendant entered into an employment agreement with the named Plaintiff Mr. Giguere and those similarly situated.

82.    These agreements incorporated all applicable state and federal laws including those creating an overtime pay rate and requiring payment for all hours worked or alternatively any illegal term in the contracts must be replaced by the court in equity.

83.    The Defendant breached these agreements by both failing to pay the named Plaintiff Mr. Giguere and those similarly situated for all hours worked and by failing to properly pay overtime for all hours worked in excess of 40 in a given week, or alternatively owe Mr. Giguere and those similarly situated in equity.

84.    The Defendant owes damages in law and equity, or alternatively must be disgorged from their ill-gotten gains.

## DEMAND FOR JURY TRIAL

85.    Mr. Giguere demands a jury for all issues so triable.

## PRAYER FOR RELIEF

Mr. Giguere respectfully requests that this Court enter an order or orders:

a.    Certifying an opt-in class pursuant to the FLSA, 29 U.S.C. §§ 201 et seq.;

b.    Providing appropriate notice of this suit and the opportunity to opt into it be to all potential members of the 216(b) Class;

c.    Awarding Mr. Giguere and the 216(b) Class unpaid minimum wage and overtime pursuant to 29 U.S.C. §§ 206, 207, 216;

d.    Awarding Mr. Giguere and the 216(b) Class costs and attorneys' fees and pre- and post-judgment interest as permitted by law;

e.    Awarding Mr. Giguere and the 216(b) Class punitive damages

f.    Certifying the Rule 23 Wage Class;

g.      Awarding Mr. Giguere and the Wage Class damages, liquidated damages and penalties pursuant to 26 M.R.S.A. §§ 626-A, 670;

h.      Awarding Mr. Giguere and the Wage Class costs and attorneys' fees and pre- and post-judgment interest as permitted by law;

i.      Awarding Mr. Giguere and the Wage Class damages for breach of contract or unjust enrichment;

j.      Granting such other relief as this Court deems just and proper.

Dated: February 4, 2016

Respectfully Submitted,

/s/Andrew Schmidt
Andrew Schmidt, Esq.
Peter Mancuso, Esq.
Andrew Schmidt Law, PLLC
97 India St.
Portland, Maine 04101

*Attorneys for Plaintiffs*