UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAVID GIGUERE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 2:16-cv-58-NT |
| | ) |
| PORT RESOURCES, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION**

David Giguere, a former employee of Defendant Port Resources, Inc., has brought this lawsuit, alleging that Port Resources violated the Fair Labor Standards Act ("**FLSA**") by failing to pay overtime for all hours worked in excess of forty hours a week. At issue is whether Port Resources can deduct "sleep time" from the hours of its round-the-clock staff. On June 14, 2016, Giguere moved to certify this action conditionally as a collective action under the FLSA and to provide notice to potential opt-in members as authorized by 29 U.S.C. § 216(b). (ECF No. 7). For the following reasons, the motion is **GRANTED**.

**FACTUAL BACKGROUND**

Port Resources is a non-profit organization that owns and runs residential facilities for adults with disabilities. MacDonald Aff. ¶ 2 (ECF No. 12-1). This program has twenty-four group homes across southern Maine, each with one to four clients. MacDonald Aff. ¶ 4; Compl. ¶ 15 (ECF No. 1). Twenty of these residences are staffed with long term staff ("**LTS**") who work according to a seven-days-on, seven-

days-off staffing and compensation schedule. MacDonald Aff. ¶ 5. Port Resources utilizes a bi-weekly payroll, with the workweek starting on Sunday and ending on Saturday. Pl's. Ex. B 1, 4 (ECF No. 7-4). As an LTS, part of Giguere's hours—Thursday through Saturday—fell within the first week of the pay period, and part of his hours—Sunday through Thursday—fell within the second week of the pay period. Pl's. Ex. B 1. The LTS schedule provides for four unpaid, four-hour breaks over the course of the seven-day shift and eight hours of unpaid sleep time per night. Schafer Aff. ¶ 5 (ECF No. 12-2); Pl's. Ex. B. So, within the two-week pay period, LTS work one seven-consecutive-day shift (a period of 168 hours) for which they receive 80 hours of working time at the regular pay rate, 16 hours of work at the overtime rate, 16 hours of unpaid break time, and 56 hours of unpaid sleep time. Schafer Aff. ¶ 5.

Twenty of the Port Resources LTS work in residences without overnight awake staff. MacDonald Aff. ¶ 6. The Port Resources policy anticipates that their sleep time may be interrupted on occasion. If LTS were forced to get up and care for a client, they "could document the incident in clinical notes and complete a hand punch correction" in order to receive compensation. Compl. ¶ 30; Schafer Aff. ¶ 3. Where an interruption causes the LTS not to have at least five hours of sleep time, the entire eight hour period is compensable "working time." Schafer Aff. ¶ 3.

In addition, Port Resources provides overnight awake staff in residential facilities where the LTS "could not generally enjoy eight hours of uninterrupted sleep time" due to the client needs. MacDonald Aff. ¶ 5. On prior occasions where LTS without overnight awake staff reported a "pattern of disrupted sleep," Port Resources

2

moved clients into more supported residences and, in one instance, adjusted to a different shift schedule. MacDonald Aff. ¶ 8.

Giguere worked as one of two alternating LTS at a two-client residence, which did not have overnight awake staff. MacDonald Aff. ¶¶ 7-8. Giguere followed the LTS schedule, and worked for seven days, followed by seven days off. Giguere Decl. ¶¶ 5-6. Giguere claims that he was usually the only employee responsible for the care of the clients overnight and that client needs would "often" wake him. Giguere Decl. ¶¶ 8, 12. Giguere asserts that "[t]hose similarly situated had similar overnight responsibilities." Compl. ¶ 22. Giguere says that he did not seek compensation for some of his nighttime work because it was "made clear to [LTS] . . . in their training that they would not be compensated" for incidents occurring within their sleep time that took less than an hour. Compl. ¶ 24; Giguere Decl. ¶ 11.

Port Resources objects that Giguere did not make Port Resources aware of the interrupted sleep. MacDonald Aff. ¶ 8. In addition, on the three occasions that Giguere requested compensation for interrupted sleep time, he received it. MacDonald Aff. ¶ 8. This included two occasions on which Giguere requested the entire eight-hour period to be compensated but did not properly document the time in accord with Port Resources protocol. Schafer Aff. ¶ 6.

The issue before me now is whether Giguere has made a sufficient showing that the proposed class is similarly situated.

## ANALYSIS

**I.     FLSA Protections**

The FLSA requires employers to pay overtime to employees who work more than 40 hours per week. 29 U.S.C. § 207. A "workweek" is seven consecutive 24-hour periods. 29 C.F.R. § 778.105. The workweek may begin at any hour on any day, but "[o]nce the beginning time of an employee's workweek is established, it remains fixed." *Id*.

Special regulations exist for employees who are required to work around the clock, and two are pertinent here. First,

> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude . . . a bona fide regularly scheduled sleeping period of not more than 8 hours worked, provided . . . the employee can usually enjoy an uninterrupted night's sleep.
>
> . . . If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted.

29 C.F.R. § 785.22(a)-(b). Second,

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.

29 C.F.R. § 785.23.

In addition, the Department of Labor Wage and Hour Division (**"WH"**) has issued an enforcement policy on compensation for sleep time for employees at residential facilities. WH provides:

> Under circumstances where an employee does not maintain his or her permanent residence on the premises and does not otherwise reside on the premises 7 days a week, WH will consider an employee who sleeps in private quarters, in a homelike environment, to reside on the premises for an extended period of time within the meaning of [§] 785.23 if the employee resides on the premises for a period of at least 120 hours in a workweek.

U.S. Dep't of Labor, Wage & Hour Div., Enforcement Policy for Hours Worked in Residential Care Establishments, 1988 WL 614199, at *2 (June 30, 1988). The WH policy specified that the minimum requirements to set aside sleep time are that the employee be compensated for eight hours in each of five consecutive 24-hour periods and sleep on the premises for all sleep periods in that 120-hour period. *Id.* This statutory and regulatory framework guides my analysis.

## II.   FLSA Conditional Certification

Employees may enforce their FLSA rights through a collective action lawsuit if they are "similarly situated." 29 U.S.C. § 216(b). The FLSA does not define this term, and neither the Supreme Court nor the First Circuit has articulated a rule. *See Saunders v. Getchell Agency*, No. 1:13-224, 2014 WL 580153, at *6 n.6 (D. Me. Feb. 12, 2014). District courts within the First Circuit have approached class certification through a two-step process. *See Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 (D. Me. 2011); *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010).

In the first stage, the plaintiff must make a "modest factual showing" that he and others with similar—but not necessarily identical—jobs suffered from a common unlawful policy or plan. *Prescott*, 729 F. Supp. 2d at 364 (citation omitted); *see also O'Donnell v. Robert Half Int'l, Inc.*, 429 F. Supp. 2d 246, 249 (D. Mass. 2006). The court's analysis is based on the pleadings and affidavits, and the standard of review is "fairly lenient." *Saunders v. Getchell Agency*, No. 1:13-224, 2014 WL 580153, at *6 (D. Me. Feb. 12, 2014) (citation omitted). If the plaintiff meets its burden, the court may approve of an appropriate notice that invites other similarly situated employees to opt into the collective action. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

In the second stage of the process, generally after discovery, the defendant may move for decertification, and the court will determine whether the employees who have opted into the class are indeed similarly situated. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006).

**III.   Whether the Plaintiffs are Similarly Situated**

Giguere presents two theories of recovery. First, he asserts that Port Resources' LTS schedule does not qualify for the regulatory exemptions from compensated sleep time. The LTS did not work a 24-hour shift on days they had breaks from duty, which, he argues, renders inapplicable the 29 C.F.R. § 785.22 exception. Moreover, by dividing workweeks into a 40-hour week for week one and a 56-hour week for week two, Port Resources' employees do not reside on the employer's premises for extended periods of time in a "workweek," as provided in the regulations

6

and policy described above. *See* §§ 778.105, 785.23; WH Enforcement Policy, 1988 WL 614199.

Second, Giguere asserts that in facilities without overnight awake staff, employees like Giguere must sleep with one ear open. Such employees, the Plaintiff argues, must be paid for all of their sleep time because they are fulfilling Port Resources' legal or contractual obligation to have a person on duty 24-7 and therefore not taking a "bona fide regularly scheduled sleeping period," as provided in § 785.22. Alternatively, at minimum, employees must be paid for the time they were woken to care for clients, even if the time is of a short duration.

In line with his theories, Plaintiff proposes two FLSA collectives. The proposed "**Short Duty Class**" includes:

> All current and former Direct Support Professional – Long Term Staff or Therapeutic Staff employees of Port Resources who in the three years prior to the filing of this Motion were required to stay overnight to watch over a Port Resources customer or customers and were not paid for all sleep time when they were not on duty for 24 hours.

Pl.'s Mot. for Cond. Cert. 5. The proposed "**Sole Caretaker Class**" includes:

> All current and former Direct Support Professional – Long Term Staff or Therapeutic Live in Staff employees of Port Resources who in the three years prior to the filing of this Motion were solely responsible for a Port Resources customer or customers overnight and were not paid for all sleep time.

Pl.'s Mot. for Conditional Certification 5. Port Resources objects to conditional certification on the grounds that Giguere did not minimally establish that: (i) there is a common unlawful policy, (ii) the proposed Short Duty Class is similarly situated to Giguere, or (iii) other potential class members are interested in joining the suit. Def.'s Opp'n 6-9 (ECF No. 12).

7

### A.    Common Unlawful Policy

Giguere asserts that he is similarly situated to the other LTS who worked this schedule and were not fully compensated for unpaid sleep time. Pl.'s Mot. for Cond. Cert. 4-5; Giguere Decl. ¶ 13. Port Resources responds that the LTS sleep time policy is "facially valid" and "lawful." Def.'s Opp'n 6. While Port Resources confirms the LTS schedule that Giguere describes in his declaration, it rejects that there is any impropriety in the formal schedule or any alleged policies conveyed at training. Def.'s Opp'n 6-9; Macdonald Aff. ¶¶ 5, 8.

Port Resources first argues that its LTS schedule complies with both § 785.22 and § 785.23, because the "extended period of time" requirement is satisfied where the employee resides on the premises for seven consecutive days and overnights. Def's Opp'n 4 (citing *Shannon v. Pleasant Valley Community Living Arrangements, Inc.*, 82 F. Supp. 2d 426, 431 (W.D. Pa. 2000)). Second, Port Resources asserts that Giguere failed to make any showing that violations of this lawful policy, in employee training or in practice, "were so widespread or common that they could be said to have been intended or condoned by the employer, thereby becoming an informal, unwritten policy." Def.'s Opp'n 7 (citing *Brickley v. Dolgencorp, Inc.*, 272 F.R.D. 344, 347-48 (W.D.N.Y. 2011)). Since Port Resources' policy is itself permissible, the Defendant argues, Giguere is merely able to allege "deviations from a common lawful policy" specific to himself. Def.'s Opp'n 7.

Port Resources' factual and legal arguments are premature at the first stage of conditional certification. Because Port Resources confirmed the common LTS schedule and because Giguere alleges that Port Resources "made clear" during

8

training that employees would not be compensated for short periods of sleep time work, I find that Giguere has made a sufficient showing of similarly situated potential class members.

### B.     Short Duty Class Not Similarly Situated to Giguere

Port Resources argues in the alternative that even if the Court approves of the Sole Caretaker Class, it should reject the Short Duty Class due to the lack of a common unlawful policy specific to this group. Def.'s Opp'n 9. Port Resources acknowledges that the four unpaid, four-hour breaks may render § 785.22 inapplicable, thus making sleep time compensable if the employee's shift is otherwise 24 hours or longer. Def.'s Opp'n 9 (citing WH Enforcement Policy, 1988 WL 614199, at *3). Nonetheless, Port Resources argues that the unpaid sleep time policy is permissible for the Short Duty Class under § 785.23 as a "reasonable agreement." Def.'s Opp'n 9. Some courts have permitted similar "reasonable agreements" regarding sleep time, even if employees have " 'periods of complete freedom from all duties' and are permitted, as here, to leave the employer's premises." *Shannon*, 82 F. Supp. 2d at 431 (quoting *Bouchard v. Reg'l Governing Bd.*, 939 F.2d 1323, 1330 (8th Cir. 1991).

At this stage of the proceedings and without adequate factual development, I am unable to conclude that Port Resources' LTS schedule met regulatory requirements. I find, however, that Giguere has established minimal reasonable grounds that either by the four-hour breaks or by the structure of the seven-day shift in three and four day workweeks, he and others similarly situated may be entitled to

9

relief under the FLSA. An in-depth review of the factual and legal issues underlying this defense will be done at the second stage.

### C. Other Potential Plaintiffs' Interest

Finally, Port Resources argues that Giguere failed to show that others are interested in joining the suit. Def.'s Opp'n 7-9. In *Johnson v. VCG Holding Corp.*, the court held that at the first stage of conditional certification, the plaintiff has the burden of making a minimal factual showing that similarly situated individuals not only exist, but also want to opt into the collective action. 802 F. Supp. 2d at 237. Other district courts in the First Circuit, however, have declined to apply this so-called "interest" requirement. *See, e.g., Battistini v. La Piccola Fontana, Inc.*, No. 15-2167, 2016 WL 3566212, at *3 (D.P.R. June 27, 2016) ("[i]t makes no sense to disallow conditional certification now before Plaintiffs have had an opportunity to put potential plaintiffs on notice of this suit and their right to join it.").

In this case, the pleadings and affidavits do not name other interested individuals who might join the suit. But Port Resources confirmed that numerous employees follow Giguere's LTS schedule. Macdonald Aff. ¶¶ 5-7. And Giguere has personal knowledge of the type of work and the hours of work that employees provided to Port Resources, as well as the alleged policy conveyed at training that interruptions of sleep less than one hour would not be compensated. Further, Giguere no longer works at Port Resources, having injured himself in a slip and fall on a wet floor in his residential facility. Compl. ¶ 21. Because he is no longer with the company and because Port Resources facilities are scattered throughout southern Maine, it is more difficult in this case for the named plaintiff to find other coworkers willing to

join the collective than it would be in cases where employees are still working together at the same facility. *See* Compl. ¶ 15. Under these circumstances, I find that there is sufficient evidence of similarly situated potential class members to justify notice. At the second phase, Port Resources may revisit its objections as to whether the class is sufficiently similar in a motion to decertify.

## IV.    Equitable Tolling of the Statute of Limitations

Giguere requests that the Court toll the statute of limitations for potential class members from June 14, 2016, the filing date of his motion for conditional certification. Pl.'s Mot. for Cond. Cert. 6 n.12. The FLSA requires an employee to commence an action for unpaid wages within two years, or three years if the cause of action arises out of a willful violation of the statute. 29 U.S.C. § 255(a). An FLSA cause of action "accrues, at the latest, when a plaintiff's employment ends." *Pike v. New Generation Donuts, LLC*, No. 12-12226, 2016 WL 707361, at *4 (D. Mass. Feb. 20, 2016). The action commences for a named plaintiff when she files both a complaint naming herself as a plaintiff and her written consent to be a party plaintiff. 29 U.S.C. § 256(a). For all other claimants, an action is considered commenced when they file their "written consent . . . in the court in which the action was commenced." 29 U.S.C. § 256(b).

Equitable tolling is a "rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). A plaintiff bears the burden of showing that he has been pursuing his rights diligently and that some extraordinary circumstances stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

The statute of limitations is not a problem for Giguere. His cause of action accrued on August 6, 2015, when he stopped working for Port Resources. Compl. ¶ 21. He filed suit with his consent form in February of 2016, well before the statute of limitations ran. Pl.'s Ex. 1 (ECF No. 1-1). The clock is ticking, however, for other potential claimants until they opt in and file consent forms with this Court. 29 U.S.C. § 256(b). Giguere has not made any allegations or arguments regarding potential claimants that would be barred, and I accordingly find he has failed to meet his burden on this issue.

## V. Mailing and Posting Notice

Giguere requests that Port Resources provide a computer readable file with the names, dates of employment, social security numbers, and last known addresses and phone numbers of all potential class members. Pl.'s Mot. for Cond. Cert. 6.[1] The requested information, other than the social security numbers, is essential to identifying potential opt-in plaintiffs and should be provided. The plaintiffs must take care to safeguard the information.

## VI. Content of Notice and Consent Form

The court must review any notice to potential class members to determine if it is appropriate, does not endorse or discourage any action, and is fair and factual. *Hoffman-La Roche, Inc.*, 493 U.S. at 170-74. Pursuant to a conference of counsel on November 30, 2016, the definition of the collective to be contained in the notice is:

---

[1] Giguere's authority for this request, *In re Penthouse Executive Compensation Litigation,* rejected the plaintiff's request for social security numbers due to privacy and security concerns. No. 10-1145, 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010).

"All current and former long term staff who worked a seven-days-on and seven-days-off schedule, who were required to remain on the premises during their sleep time, and who were employed at any time from December 1, 2013 to the present." In addition, Giguere accepts Port Resources' edits to the notice. Pl.'s Reply 7 n.2 (ECF No. 13).

## CONCLUSION

For the reasons stated above, I **GRANT** the Plaintiff's motion for conditional certification of this collective action.


SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 30th day of November, 2016.