UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID GIGUERE, | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 2:16-cv-00058-NT |
| v. | ) | |
| | ) | |
| PORT RESOURCES, INC., | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
WITH INCORPORATED MEMORANDUM**

**INTRODUCTION**

This is an action for alleged unpaid overtime. Plaintiffs were employed by Port Resources to provide direct support services to developmentally disabled clients in group homes maintained by Port Resources. Their work schedules consisted of shifts of seven consecutive days, with seven corresponding overnights, every other week. The gravamen of the complaint is that they are entitled to be compensated for all unpaid sleep time, generally eight hours per night, when they were required to remain on the premises.

The complaint contains four counts: I- violation of the FLSA by failing to pay overtime for all compensable work time over 40 hours; II- violation of Maine's Wage Payment Law by failing to pay plaintiffs for all hours worked and for all wages due on paydays; III- violation of Maine's Minimum Wage/Overtime Law by failing to pay overtime for all compensable work time over 40 hours; IV- breach of contract and unjust enrichment.

The complaint was brought by Plaintiff Giguere and sought collective action status under Count I and class action status under Counts II- IV. A class was conditionally certified under Count I, but the request for class action status under Counts II-IV has been abandoned. Thirty

1

individuals opted in to the collection action.  For the reasons discussed *infra*, Port Resources moves for summary judgment on Counts I, III and IV.

## FACTUAL BACKGROUND

Port Resources is a nonprofit organization which provides support to individuals with developmental disabilities and behavioral health challenges.  Its Adult Residential Program provides direct support services to clients in private home settings where trained staff provide daily living skills development, medication administration, personal care assistance, and community integration.  The program has 24 group residences, with 1-4 clients in each residence.  *(DSSMF ¶s 1-2, 4)*.

With the exception of 4 residences which are supported by short term staff only, the program utilizes a Long Term Staff (LTS) model in which each residence is primarily supported by an LTS, who works a 7 days on/7 days off schedule, alternating weekly.  The LTS resides on the premises during his or her shift.  Each shift is from Thursday to Thursday and has 7 consecutive overnights. The schedule provides for 8 hours of unpaid sleep time per night and 4 breaks of 4 hours each on Friday, Monday, Tuesday and Wednesday of each shift.  With the exception of 8 hours of sleep time per night and the 4 breaks, all hours within the shift are considered compensable working time. *(DSSMF ¶s 6, 9-14, 28)*.

If the LTS's sleep time is interrupted to attend to a client, the interruption is counted as compensable working time.  If the interruptions are such that the LTS cannot get at least 5 hours of sleep, the entire period is counted as compensable working time.  In the event of an interruption, the LTS documents the interruption in the client's daily service chart and notifies their program manager so that their timesheet can be adjusted accordingly.  The LTS schedule

and sleep time policy is explained and agreed to by the LTS during the interview and orientation process. *(DSSMF ¶s 32, 45-53)*.

## COUNT I (FLSA COLLECTIVE ACTION)

**A. SLEEP TIME POLICY**

**a.**

In *Skidmore v. Swift & Co., 323 U.S. 134 (1944)*, the Supreme Court held that whether sleep time must be compensated *". . . involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all the surrounding circumstances. . . [t]he law does not impose an agreement upon the parties. It imposes upon the courts the task of finding what the arrangement was." Id., at 137* (emphasis supplied). In 1961, the Wage & Hour Division (WHD) issued an interpretive bulletin that is now Part 785 of Title 29 of the Code of Federal Regulations. Several provisions deal with sleep time issues. *29 C.F.R. 785.20-.23*; *see, Bouchard v. Regional Governing Bd., 939 F.2d 1323, 1327 (8th Cir. 1991)*. Section 785.23 essentially codified the *Skidmore* decision.

Under § 785.23, employees who reside "for extended periods of time" on their employer's premises may enter into "any reasonable agreement" concerning sleep time, even if they have other "periods of complete freedom from all duties" and are permitted to leave the premises during these other periods, which would break an on-duty period and thus render § 785.22 technically inapplicable. *Shannon v. Pleasant Valley Community Living Arrangements, Inc., 82 F. Supp. 2d 426, 430-31 (W.D.Pa. 2000)*.

Where § 785.23 applies, it is not appropriate to analyze the compensability of sleep time under § 785.14, which deals with waiting time in general and the distinction between "engaged

3

to wait" and "waiting to engage." *Bouchard*, 939 F.2d at 1330. "As the Supreme Court decisions in *Armour* and *Skidmore* and the position of the Department in those cases make clear, sleep time raises different compensation questions under the FLSA than do other types of waiting time." *Id.* Under §785.23, "any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted" and such an agreement "may not be rejected on the basis of a general conclusion that [the] sleeping employees were engaged to wait within the meaning of § 785.14." *Id.*

Agreements to exclude sleep time from compensable work time can be implied. *Braziel v. Tobosa Developmental Services*, 166 F.3d 1061, 1063 (10th Cir. 1999). Where an employee understands and acquiesces to the policy when hired there is, as a matter of law, an implied agreement to exclude sleep time. *Id.; Hendricks v. Oklahoma Production Center Group Homes, Inc.*, 159 Fed. Appx. 875, 878 (10th Cir. 2005). Even if the employee subsequently becomes unhappy with the policy, where the employee was informed of, understood, and acquiesced to the policy by accepting pay checks based on the schedule, there is an implied agreement as a matter of law. *Braziel*, 166 F.3d at 1063; *Shannon*, 82 F. Supp. 2d at 432; *Sidell v. Presidential CRF, Inc.*, 2010 WL 4723722$^{*6}$ (S.D. Ind.).

b.

**1. <u>Port Resources is entitled to judgment as a matter of law that the LTS staff reside on its premises "for extended periods of time" within the meaning of § 785.23.</u>**

In a 1981 opinion letter, the WHD stated that "employees who reside on their employer's premises five days a week are considered to reside there 'for extended periods of time'." *1981 WL 179033$^{*1}$*. In response to the question of whether an employee who is on duty for less than 120 hours can be considered as residing on the premises for an extended period of time, the

4

WHD answered that "they can be considered as residing on the employer's premises, provided that they spend five consecutive days or five consecutive nights on the premises." *Id., at* *²*. In a 1988 enforcement policy applicable to residential care (group home) establishments, WHD announced that it was "refining and restating the minimum conditions required to meet this rule" and that "[a]n employee will be found to reside on the premises for extended periods of time if: (1) the employee is on duty at the group home and is compensated for at least eight hours in each of five consecutive 24-hour periods; and (2) the employee sleeps on the premises for all sleep periods between the beginning and end of this 120-hour period." *1988 WL 614199*²*.

The LTS schedule clearly exceeds these minimum standards- they are on duty for 7 consecutive days and nights, they are compensated for more than 8 hours for each 24-hour period, and they sleep on the premises every night. Such 7 day shifts are "extended periods of time" within the meaning of § 785.23. *Shannon, 82 F. Supp. 2d at 431; Gay v. Extended Family Concepts, 102 F. Supp. 2d 449, 451, 455 (N.D. Ohio 2000); Beaston v. Scotland School for Veterans' Children*, 693 F. Supp., 234, 239 (M.D. Pa. 1988).

2. **Port Resources is entitled to judgment as a matter of law that its sleep time policy is reasonable.**

In its 1988 enforcement policy, WHD listed the following criteria for a reasonable agreement under § 785.23: "(1) the employer and the employee have reached agreement in advance that sleep time is being deducted; (2) adequate sleeping facilities with private quarters. . . were furnished; (3) if interruptions occurred, employees in fact got at least five hours of sleep during the scheduled sleep period; (4) employees are in fact compensated for any interruptions in sleep; and (5) no more than eight hours of sleep time is deducted for each 24-hour on-duty period." *1988 WL 614199*³*. Apparently, although WHD takes the position that a short break during the day, such as the 4 hour breaks in the LTS schedule, interrupts the 24 hour on-duty

5

period and thus renders § 785.22 inapplicable (see last paragraph of 1988 enforcement policy), it believes that a reasonable agreement under § 785.23 for those living on the premises for an extended period of time should meet the same criteria as required for a reasonable agreement under § 785.22.

Port Resources' sleep time policy meets the criteria for a reasonable agreement under § 785.23: (1) the policy is explained and agreed to in advance of employment *(DSSMF ¶s 45-46, 48-49, 51, 53)*; (2) the LTS have their own bedroom furnished with a bed, dresser and chair, and can further furnish it as they wish. *(DSSMF ¶s 15-17);* (3) it provides for an unpaid sleep period of not more than 8 hours per night. *(DSSMF ¶ 32);* (4) if the sleep period is interrupted, the LTS documents the interruption, notifies the program manager, and has their timesheet adjusted accordingly. *(DSSMF ¶32);* (5) if the interruptions are such that the LTS cannot get at least 5 hours of sleep, the entire period is counted as compensable working time. *(DSSMF ¶32).* Plaintiffs have been paid for all sleep time interruptions recorded on their timesheets. *(DSSMF ¶62).* Courts have repeatedly, practically unanimously deemed reasonable as a matter of law, policies like Port Resources that meet the criteria for a reasonable agreement as set forth in the 1988 enforcement policy. *See, e.g., Hendricks, 159 Fed. Appx. At 877-78; Braziel, 166 F.3d at 1063-64; Bouchard, 939 F.2d at 1329-1337; Shannon, 82 F. Supp. 2d at 432-434; Beaston, 693 F. Supp. At 236-240.*

### 3. **Port Resources is entitled to summary judgment in its favor on the following plaintiffs' claims for unpaid sleep time.**

**(a) Eulade Nkurunziza.** Nkurunziza signed a written sleep time agreement before beginning his LTS employment. (*DSSMF ¶s 63-64).* This written agreement meets all of the criteria for an agreement under the 1988 enforcement policy and supporting case law and thus, as a matter of

law, is a reasonable agreement to exclude sleep time within the meaning of § 785.23. During his employment as an LTS, Nkurunziza has never awakened during his sleep time period. *(DSSMF ¶ 66).* Given his reasonable agreement excluding an 8-hour sleep period from compensable working time and that he was never interrupted during his sleep period, Port Resources is entitled to summary judgment on his claim for unpaid sleep time.

**(b) Renovat Baragengana, Ken Cole, Cynthia Cookingham, Mary Feeley, Jerry Garcia**. These five plaintiffs all signed a written sleep time agreement before beginning their LTS employment. *(DSSMF ¶s 58-59).* These written agreements, all identical to the agreement signed by Nkurunziza, meet all the criteria for an agreement under the 1988 enforcement policy and supporting case law and thus, as a matter of law, are reasonable agreements to exclude sleep time within the meaning of §785.23. These plaintiffs have been paid for all sleep time interruptions recorded on their timesheets. *(DSSMF ¶ 62).* Given their reasonable agreements excluding an 8-hour sleep period for compensable working time and that they have been paid for all sleep time interruptions recorded on their timesheets, Port Resources is entitled to summary judgment on their claims for unpaid sleep time.

**(c) Renee Jordan**. Jordan became an LTS in August 2016. *(DSSMF ¶ 71).* She has not signed a written sleep time agreement. Her program manager explained the sleep time policy to her before she began her employment as an LST. *(DSSMF ¶ 72).* Jordan understood that under the policy she would be not compensated for up to 8 hours of sleep time per night. *(DSSMF ¶75).* She also understood that if her sleep time was interrupted to attend to a client, she could document the interruption, request to be paid for that time, and Port Resources would pay her for the interruption. *(DSSMF ¶ 76).* During her LTS employment, she has been awakened to attend to a client only once and she was paid for that time. *(DSSMF ¶78).*

7

Agreements to exclude sleep time from compensable work time can be implied as well as express. Where an employee is informed of and understands the policy when hired and acquiesces to the policy by accepting paychecks based on the schedule, there is an implied agreement to exclude sleep time as a matter of law. *Braziel, 166 F.3d at 1063; Hendricks, 159 Fed. Appx. At 878; Shannon, 82 F. Supp. 2d at 432; Sidell, at *6*. The policy was explained to Jordan before she began her LTS employment. She understood that she would not be compensated for up to 8 hours of sleep time per night and also understood that if her sleep time was interrupted, she could document that interruption and get paid for that time. She was interrupted once during her LTS employment and was paid for that interruption. On these facts, she had an implied agreement to exclude up to 8 hours of sleep time and was paid for the only interruption to that sleep time. Port Resources is entitled to summary judgment on her claim for unpaid sleep time.

**(d) Ryan Jarrell.** Jarrell was employed as an LTS from December 2014-January 2016. *(DSSMF ¶ 94).* Before he began his LTS employment, Jenn Dearborn, at that time HR Assistant, reviewed and discussed the sleep time policy with him. *(DSSMF ¶s 52, 48).* Jarrell understood when he started his LTS employment that he would not be paid for up to 8 hours of sleep time per night, but that if his sleep time was interrupted, he could document the interruption and get paid for that time. *(DSSMF ¶ 96).* Several months into his employment, on June 2, 2015, he signed a written sleep time agreement identical to the agreement signed by Nkurunziza and discussed previously. *(DSSMF ¶ 95).* Port Resources never denied or refused payment for any interruption that he documented. *(DSSMF ¶ 97).* Jarrell was responsible for accurately recording all working time on his timesheets. *(DSSMF ¶ 98).* His timesheets are accurate and he has been paid for all sleep time interruptions recorded on his timesheets. *(DSSMF ¶s 99-100).*

Jarrell's situation is similar to the one addressed by the *Braziel* court, in which the plaintiff subsequently signed an express written agreement and the court ruled that there was an implied agreement as a matter of law in the period of time before the written agreement was signed. *166 F.3d at 1063 n. 4, 1064.* From June 2, 2015 on, Jarrell had an express written agreement to exclude up to 8 hours of sleep time from compensable work time. Before that, he had an implied agreement as a matter of law. He was paid for all interruptions recorded on his time sheets. Port Resources is entitled to summary judgment on his claim for unpaid sleep time.

**(e) John Farrell**. Farrell was employed as an LTS for approximately 1 ½ years starting in February 2015. *(DSSMF ¶ 82).* Before he began his LTS employment, Jenn Dearborn, at that time an HR Assistant, reviewed and discussed the sleep time policy with him. *(DSSMF ¶s 52, 48).* Farrell understood when he started his LTS employment that he would not be paid for up to 8 hours of sleep time per night, but if his sleep time was interrupted, he could document the interruption and get paid for that time, and that if he didn't get at least 5 hours of sleep he would be paid for the whole night. *(DSSMF ¶ 85).* Several months into his employment, on May 22, 2015, he signed a written sleep time agreement identical to the agreement signed by Nkurunziza. *(DSSMF ¶ 84).* Overnight awake staff was assigned to his residence during his entire LTS employment; the overnight staff was responsible for checking on the clients and he relied upon them to do so. *(DSSMF ¶s 86-87).* He was seldom awakened during his sleep period, maybe a half dozen times total. *(DSSMF ¶s 88-89).* His requests to be paid for these infrequent interruptions were directed to his program manager and he does not recall her ever denying a request. *(DSSMF ¶ 92).* He was paid for all sleep time interruptions recorded on his timesheets. *(DSSMF ¶ 93).*

From May 22, 2015 on, Jarrell has an express written agreement to exclude up to 8 hours of sleep time from compensable work time. Before that, he had an implied agreement as a matter of law. He was paid for all interruptions recorded on his timesheets. Port Resources is entitled to summary judgment on his claim for unpaid sleep time.

**(f) David Giguere.** Giguere was employed as an LTS from May 2014- August 2015. *(DSSMF ¶ 101).* Before he began his LTS employment, Jenn Dearborn, at the time an HR Assistant, reviewed and discussed the sleep time policy with him *(DSSMF ¶s 52, 48).* He did not have any questions about the policy *(DSSMF ¶104).* Giguere understood that he would not be paid for up to 8 hours of sleep time per night, but if his sleep time was interrupted, he could document the interruption and get paid for that time. *(DSSMF ¶s 105-106).* Giguere was responsible for accurately recording all working time on his timesheets. *(DSSMF ¶ 108).* He recorded interruptions to his sleep time on his timesheets and was paid for all such interruptions that he recorded. *(DSSMF ¶s 109-111).* On these facts, Giguere had an implied agreement to exclude up to 8 hours of sleep time and was paid for all documented interruptions to that sleep time. Port Resources is entitled to summary judgment on his claim for unpaid sleep time.

**B.   STATUTE OF LIMITATIONS**

An action under the FLSA must be commenced within two years after the cause of action accrues, unless the violations are willful in which case the limitations period is three years. *29 U.S.C. 255(a).* An action is considered to have commenced on the date the complaint was filed for named plaintiffs and on the date when a written consent is filed for opt-in plaintiffs. *29 U.S.C. 256 (a).* Plaintiffs have the burden of establishing that the violation was willful and thus governed by the three-year limitations period. *Bolduc v. National Semi Conductor Corp., 35 F. Supp. 2d 106, 116 n.7 (D. Me. 1998).*

A violation is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The Supreme Court in *Richland Shoe* expressly rejected a negligence standard for determining whether an employer acted willfully. *Bay State Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 681 (1st Cir. 1998); *Tum v. Barber Foods, Inc.*, 2002 WL 89399[*6] (D.Me). ("An employer does not act willfully even if it acts unreasonably in determining whether it is in compliance with the FLSA.") Thus, the limitations period is two years unless plaintiffs can establish that Port Resources either knew its policies violated the FLSA or acted in "reckless disregard. . . of the possibility that its alleged actions violated the FLSA." *Tum, at* [*6].

The sleep time policy was developed in conjunction with the transition from the shift staff model to the LTS model. Celia Schafer, Director of Human Resources at the time, was primarily responsible for developing the policy. In doing so, she consulted with representatives of another agency which had many years of experience with the live-in staff model of care. In researching the legality of the policy, she reviewed and relied upon the 2009 edition of the ANCOR (American Network of Community Options and Resources) Wage and Hour Handbook *(DSSMF ¶s 38-41)*. The ANCOR handbook contains a detailed discussion of the sleep time provisions in 29 C.F.R. 785.21-.23 and the 1988 enforcement policy and extensive advice on how to craft sleep time policies to comply with these regulations and enforcement policy. *(DSSMF ¶ 42)*. Based on the guidance provided by the ANCOR handbook, Schafer believed and still believes that the sleep time policy is lawful. *(DSSMF ¶ 44)*. Its difficult to see how she could have concluded otherwise. Policies like Port Resources' have been approved by WHD opinion letters, endorsed by WHD enforcement policies, and upheld by the courts. There is no

11

evidence that Schafer or Port Resources acted in reckless disregard of whether its policy complied with the FLSA.

The court should grant summary judgment in favor of Port Resources, ruling that any violations were not willful and thus the applicable limitations period is two years. Applying this limitations period, the claims of Robert Brogden, Deborah Dow and Paige Harris are time-barred. Brogden's last date of employment as an LTS was September 4, 2014 *(DSSMF ¶ 112)* and his consent was filed January 19, 2017. (Doc. 30-1, #156). Dow's last date of employment in any capacity was December 25, 2014 *(DSSMF ¶ 113)* and her consent was filed January 4, 2017 (Doc. 27-1, #136). Harris' last date of employment in any capacity was June 12, 2014 *(DSSMF ¶ 114)* and her consent was filed January 25, 2017 (Doc. 32-1, #168).

## COUNT III (MAINE MINIMUM WAGE/OVERTIME LAW

Giguere asserts that by failing to pay him for his sleep time, Port Resources violated both the minimum wage and overtime provisions of Maine Law. *26 M.R.S.A. § 663(1), (3).* He seeks recovery for the amount of alleged unpaid wages and "an additional amount equal to such wages as liquidated damages." *Id., § 670.*

The basic question, of course, is whether Giguere was engaged in work during his sleep time. "When . . . a term is not defined in either the relevant provisions or in prior decisions of this court, Maine Courts may look to analogous federal statutes, regulations, and case law for guidance." *Gordan v. Maine Cent. R.R., 657 A2d 785, 786 (Me. 1995).* "Work" is not defined in the Maine statute. No Maine court has addressed the meaning of "work" in the context of sleep time for employees residing on their employer's premises for extended periods of time. The Law Court has looked to federal law for guidance as to the meaning of "work" in other contexts. *Crook v. Russell, 532 A.2d 1351, 1354 (Me. 1987).* Presumably, it would do likewise in

determining whether and under what circumstances sleep time constitutes "work." *See, e.g., Galloway v. George Junior Republic, 2013 WL 5307584[*11] (W.D.Pa.).*

As discussed earlier in relation to Count I, Giguere and Port Resources had, as a matter of law, an implied agreement to exclude up to 8 hours of sleep time per night from compensable work time and he was paid for all interruptions to that work time that he recorded on his timesheets. Since his sleep time was lawfully excluded from compensable work time, Port Resources could not have violated § 663(1) and (3) by not paying him for that time. Port Resources is entitled to summary judgment on Count III of the complaint.

## COUNT IV (BREACH OF CONTRACT/UNJUST ENRICHMENT)

### 1. **Port Resources is entitled to summary judgment in its favor on Giguere's breach of contract claim.**

Giguere's employment relationship with Port Resources created a contract of employment for an indefinite term. *Burnell v. Town of Kingfield, 686 A.2d 1072, 1073-74 (Me. 1996); In re Wage Payment Litigation, 2000 ME 162, ¶20, 759 A.2d 217, 224.*

Under the terms of his employment contract, Giguere worked a 7 days on/ 7 days off schedule, alternating weekly. He resided on the premises during his shift. Each shift was from Thursday to Thursday with 7 consecutive overnights. His schedule provided for up to 8 hours of unpaid sleep time per night and 4 breaks of 4 hours each during the 7 day shift. With the exception of 8 hours of sleep time per night and the 4 breaks, all hours within the shift were compensable. *(DSSMF ¶s 9-14, 28).* If his sleeping time was interrupted to attend to a client, the interruption was counted as compensable working time. In the event of an interruption, Giguere was to document the interruption and notify his program manager so that his timesheet could be adjusted accordingly. *(DSSMF ¶s 32, 52-53, 105-106).* Giguere was responsible for

accurately recording work time on his timesheets. He was paid for all of the time that he recorded on his timesheets. *(DSSMF ¶s 107-111).*

Giguere claims that the terms of his employment contract violated federal and state law. Nevertheless, it is undisputed that he was paid according to those terms. He may or may not be able to prove a violation of law, but he cannot establish a breach of the terms of his employment contact.

2. **Port Resources is entitled to summary judgment in its favor on Giguere's unjust enrichment claim.**

The contract of employment between Giguere and Port Resources precludes him from maintaining an unjust enrichment claim. *In re Wage Payment Litigation*, *759 A.2d at 224, ¶s 19-20.*

Dated: September 22, 2017        /s/ Graydon G. Stevens, Esq.
                                 Graydon G. Stevens, Esq., BN 299
                                 Attorney for Port Resources, Inc.

                                 KELLY, REMMEL & ZIMMERMAN
                                 53 Exchange Street
                                 P.O. Box 597
                                 Portland, Maine 04112
                                 (207) 775-1020

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| DAVID GIGUERE, | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 2:16-cv-00058-NT |
| v. | ) | |
| | ) | |
| PORT RESOURCES, INC., | ) | |
| | ) | |
| Defendant | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to the following counsel:

> Andrew Schmidt, Esq.
> Peter Mancuso, Esq.
> Andrew Schmidt Law PLLC
> 97 India Street
> Portland, Maine 04101-4248

Dated: September 22, 2017            /s/ Graydon G. Stevens, Esq.
                                     Graydon G. Stevens, Esq., BN 299
                                     Attorney for Port Resources, Inc.

                                     KELLY, REMMEL & ZIMMERMAN
                                     53 Exchange Street
                                     P.O. Box 597
                                     Portland, Maine 04112
                                     (207) 775-1020