# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| DAVID GIGUERE,<br>on his own behalf and on behalf of<br>those similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>PORT RESOURCES, INC.,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Docket No. 2:16-cv-58-NT<br>)<br>)<br>)<br>)<br>) |

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Before me are the parties' cross motions for summary judgment. (ECF Nos. 53, 56.) Three counts remain in this case.[1] Count One alleges failure to pay overtime under the Fair Labor Standards Act ("**FLSA**"), and it is the only count pursued as a collective action. Count Two alleges a breach of the Maine Payment Wage Law. Count Three alleges a breach of the Maine Minimum Wage Law. The Defendant Port Resources seeks summary judgment on Counts One and Three. David Giguere, the named Plaintiff in Count One and sole Plaintiff in Counts Two and Three, seeks summary judgment on all three counts. For the following reasons, the Defendant's motion is **DENIED** and the Plaintiffs' motion is **GRANTED**.

---

[1]     Count Four, which alleged breach of contract and unjust enrichment, was withdrawn. Pl.'s Mot. 2 n.1 (ECF No. 56).

## FACTUAL BACKGROUND

Defendant Port Resources is a nonprofit organization that provides housing and services to adults with developmental disabilities and behavioral health challenges. Trained staff provide clients with direct support in skills development, medication administration, personal care assistance, and community integration. The program has 24 group residences, with between one and four clients in each residence.

Twenty of these residences are organized according to the long term staff ("**LTS**") model, which is the focus of this suit. In the LTS model, each residence is primarily supported by one LTS, who works seven days on, followed by seven days off, alternating weekly with another LTS assigned to the same residence. Eleven of the LTS residences also have overnight awake staff. SMF ¶ 22. Overnight staff are responsible for attending to clients during the night, as necessary. SMF ¶ 33. Overnight staff sometimes enlist the aid of LTS during their sleep time. SMF ¶ 33.

Each LTS shift runs from Thursday to Thursday, with seven consecutive nights when the LTS stays at the residence. The shift includes eight hours of unpaid sleep time each night, as well as a four-hour unpaid breaks during the day every Friday, Monday, Tuesday, and Wednesday. Port Resources treats all other hours in the shift as compensated working time. SMF ¶ 28. Payroll is computed from Sunday to Sunday, so LTS generally work 40 hours in the first week (Thursday to Saturday), and 56 hours in the second week (Sunday to Thursday), before going off duty for seven days. Port Resources bills MaineCare for reimbursement on a per diem basis. SMF ¶¶ 169-70. The per diem rate is determined through a comparison of the actual hours

2

of direct support provided, including LTS overnight hours, against the hours approved by DHHS. MacDonald Aff. ¶ 5 (Oct. 31, 2017) (ECF No. 59-1).

The LTS model was adopted in 2012, and direct service professionals working for Port Resources at the time were given a choice to be hired as an LTS or stay on in their current role. SMF ¶ 144. If they chose the latter, however, there was no guarantee they would remain at the same residence. SMF ¶ 144.

From 2012-2015, the LTS model, including the schedule for sleep and work in the position, was discussed with potential employees. SMF ¶ 46.[2] Jenn Dearborn, Associate Director of Human Resources, has been the person primarily responsible for reviewing and explaining the LTS schedule and sleep time policy with prospective LTS. SMF ¶ 49. In 2015, Schafer drafted a written version of the sleep policy that did not make any substantive changes to the policy. SMF ¶¶ 55-57.  The  written  Sleep Time Agreement stated:

> This confirms the agreement between Port Resources and a Direct Support Professional who may be assigned to be on duty for one or more twenty-four (24) shifts. Under wage and hour guidelines, 9 C.F.R. sections 785.22 and 785.23, where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude from hours worked a bona fide meal period and a bona fide regularly scheduled sleeping period of not more than 8 hours, provided that adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an interrupted night's sleep.
>
> If the sleeping period is interrupted by a <u>call to duty</u>, the interruption will be counted as hours worked. If the employee cannot get at least 5 hours' sleep during the scheduled sleep period, the entire time should be

---

[2]     The Plaintiffs deny Port Resources' assertion that the policy was explained so the potential employees understood and agreed to it, stating that the policy was a "condition of the job." SMF ¶ 46; *see also* SMF ¶¶ 51-54.

treated as working time. The eight-hour sleeping period will be excluded from hours worked unless performance of work duties is required.

If the Direct Support Professional does have to work during the sleep period, they should record their time worked on the daily service charts and notify their Program Manager of the interruption so that their electronic time sheet can be corrected.

If anyone has any questions, please feel free to contact the Director of Human Resources.

Harmon Dep. Ex. 2 (ECF No. 55-10). The Plaintiffs who were already working in 2015 signed the agreement after an initial period of employment; the Plaintiffs who started with Port Resources in or after 2015 signed it before starting work. SMF ¶¶ 58-61.

Celia Shafter, Director of Human Resources, explained that calls to duty include instances where the client needs assistance, becomes sick, or falls out of bed "so that they had to tend to them." SMF ¶ 119. She stated that qualifying interruptions constitute the time taken "to attend to a client, all time spent attending to the client is considered to be working time." SMF ¶ 32; Schafer Aff. 1 (ECF No. 52-30).[3] In addition, LTS could be compensated for non-client-specific interruptions like fire drills. SMF ¶ 123. The LTS were responsible for recording interruptions. SMF ¶ 117. All LTS were expected to log interruptions in the client's daily service chart and notify their manager to adjust the timesheet. SMF ¶ 32. LTS with overnight staff

---

[3]     The Plaintiffs argue that only interruptions of a "clinical nature" were counted and cite as record authority for this the deposition of HR Director Schafer. SMF ¶ 32. Schafer stated in her deposition that the employee was instructed to document interruptions in "the clinical daily documentation and report to the manager what happened—why they got up during the night." Schafer Dep. 28 (ECF No. 52-1). (Port Resources further asserted that LTS are not clinicians and most of their services were not of a clinical nature. SMF ¶ 118; MacDonald Aff. ¶ 4 (Oct. 31, 2017) (ECF No. 59-1)). The Plaintiffs' qualification to SMF ¶ 32 does not strike me as a denial or qualification of the asserted fact that LTS could be compensated for calls to duty or to attend to a client.

were also required to obtain confirmation from the overnight staff that the LTS had to get up to attend to a client. SMF ¶ 120.

The parties dispute what kinds of interruptions fell under the policy or otherwise should have been compensated, such as whether LTS were expected to monitor or be aware of whether a client was awake during the night. SMF ¶¶ 34-37, 151-58. The parties also dispute whether the Plaintiffs were discouraged from reporting calls to duty or were told that only calls to duty that took a certain amount of time should be reported. SMF ¶¶125-35. In addition, eight of the LTS reported not being able to get five consecutive hours of sleep on three to seven nights of a shift. SMF ¶¶ 159-66. Port Resources denies this assertion, noting that these LTS had no recorded interruptions on most of their overnights. SMF ¶¶ 159-66. All of the Plaintiffs have been paid for all sleep time interruptions recorded on their timesheets. SMF ¶ 62.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine where a reasonable jury could resolve the point in favor of either party. *Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). A fact is material where it could influence the outcome of the litigation. *Id.* On a motion for summary judgment, courts must construe the record in the light most favorable to the non-movant and resolve all reasonable inferences in the non-movant's favor. *Burns v. Johnson*, 829 F.3d 1, 8 (1st Cir. 2016). Cross-motions for

summary judgment proceed under the same standards applicable to standalone summary judgment motions, but each motion is addressed separately. *Fadili v. Deutsche Bank Nat'l Tr. Co.*, 772 F.3d 951, 953 (1st Cir. 2014).

## DISCUSSION

### I.    Fair Labor Standards Act

#### A.    Statutory and Regulatory Framework

##### 1.    The Fair Labor Standards Act

The FLSA, 29 U.S.C. § 201 *et seq.*, provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

##### 2.    The Code of Federal Regulations

Provisions contained in Chapter V—Wage and Hour Division, Department of Labor, Subchapter B—Statements of General Policy or Interpretation Not Directly Related to Regulations, found in 29 C.F.R. §§ 777-94, are also relevant.[4] Interpretive

---

[4]    "The United States Department of Labor (DOL) has promulgated substantial interpretive guidance designed to assist in assessing the compensability of waiting time under FLSA. Although these interpretive rules are non-binding, [courts] have nonetheless . . . turned to these longstanding DOL regulations in resolving FLSA waiting time disputes." *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 940 (9th Cir. 2004) (internal citations omitted). "[I]nterpretive rules may sometimes function as precedents, [but] they enjoy no *Chevron* status as a class." *United States v. Mead Corp.*, 533 U.S. 218, 232 (2001). An agency interpretation not entitled to *Chevron* deference is often entitled to respect based on its "power to persuade." *Mead*, 533 U.S. at 227-28 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)); *see also* William Eskridge Jr. & Lauren E. Baer, *The Continuum of Deference: Supreme Court Treatment of Agency Statutory Interpretations from Chevron to Hamdan*, 96 GEO. L.J. 1083, 1088. *Skidmore* held that "[w]e consider that the rulings, interpretations and opinions of the Administrator under [the FLSA], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140. The stringency of judicial review depends on "the

6

Bulletins on Hours Worked, explain how the Wage and Hour Division ("**WHD**") will treat sleep time occurring during the course of employment. 29 C.F.R. §§ 785.20-.23.

Sections 785.20 and 785.21 set forth the general rule that sleep time is considered work time.[5] Section 785.20 provides: "Under certain conditions an employee is considered to be working even though some of his time is spent in sleeping or in certain other activities." 29 C.F.R. § 785.20. Section 785.21, captioned "Less than 24-hour duty," provides: "An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy." 29 C.F.R. § 785.21.

Sections 785.22 and 785.23 allow employers to carve sleep time out of compensable time where certain conditions are met. Section 785.22 provides:

> Duty of 24 hours or more.
>
> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

29 C.F.R. § 785.22. Section 785.23 provides:

> Employees residing on employer's premises or working at home.

---

thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.*

[5]     Generally, time at the worksite is considered hours worked. 29 C.F.R. § 785.7 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)).

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home.

29 C.F.R. § 785.23.

### 3.    Department of Labor Guidance

The WHD has also issued less formal guidance to employers on sleep time compensation issues in opinion letters and enforcement memoranda and bulletins.

### a.    The 1981 Letter

In February of 1981, the WHD issued an opinion letter to clarify two previous letters dealing with deducting sleep time from the hours of houseparents sleeping at group homes for mentally disabled individuals. Dep't of Labor, Opinion Letter Fair Labor Standards Act (1981), 1981 WL 179033 ("**1981 Letter**"). The houseparents in question, who worked five or six days in a row, maintained permanent residences elsewhere in the community but slept in private quarters at the group home while on duty there. The houseparents had several hours off each afternoon where they were free to leave the premises and do whatever they chose to do, thus putting them outside of § 785.22.

The 1981 Letter answered two questions pertinent to this litigation. First, the WHD opined that the fact that the houseparents had separate residences did not

disqualify them from fitting within § 785.23 as employees who reside on the employer's premises for extended periods of time. 1981 Letter, at *1. "In general, we take the position that employees who reside on their employer's premises five days a week are considered to reside there 'for extended periods of time.' " *Id.* Second, the 1981 Letter clarified that "extended periods of time" could be satisfied two ways, either (1) by working for 120 hours (ignoring off-time duty that may be allowed for a few hours each day) within a single week; or (2) by spending five consecutive days or five consecutive nights on the premises even though they worked less than 120 hours in the week. *Id.*, at *2.

### b.      The 1988 Memo

On June 30, 1988, the WHD issued additional guidance pertaining to residential care facilities. Dep't of Labor, Hours Worked in Residential Care (Group Home) Establishments—Sleep Time and Related Issues—Enforcement Policy (June 30, 1988), 1988 WL 614199 ("**1988 Memo**"). The WHD explained that § 785.23 has three basic requirements: (1) that the employee reside on the employer's premises permanently or for extended periods of time, (2) that the employer and employee enter a reasonable agreement to exclude sleep time, and (3) the employer provide a private space for the employee's sleep.

The 1988 Memo explained terms "used in the enforcement policy" that "have caused some difficulty and are being defined for further guidance." 1988 Memo, at *2. A "workweek," the 1988 Memo stated, "means seven consecutive 24-hour periods (29

9

C.F.R. § 778.105).''[6] *Id.* Regarding the requirement that an employee reside at the facility for an extended period of time, the 1988 Memo clarified that:

> Under circumstances where an employee does not maintain his or her permanent residence on the premises and does not otherwise reside on the premises 7 days a week, WH will consider an employee who sleeps in private quarters, in a homelike environment, to reside on the premises for an extended period of time within the meaning of IB 785.23 if the employee resides on the premises for a period of 120 hours in a workweek.
>
> WH is refining and restating the minimum conditions required to meet this rule. An employee will be found to reside on the premises for an extended period of time if:
> (1) The employee is on duty at the group home and is compensated for at least eight hours in each of five consecutive 24-hour periods; and
> (2) The employee sleeps on the premises for all sleep periods between the beginning and end of this 120-hour period.

1988 Memo, at *3.

Regarding the requirement that the employer and employee enter a reasonable agreement, the 1988 Memo stated that:

> where sleep time is to be deducted, the employer should determine if the following criteria are met:
> (1) the employer and the employee have reached agreement in advance that sleep time is being deducted;
> (2) adequate sleeping facilities with private quarters . . . were furnished;[7]

---

[6]    Section 778.105, entitled "Determining the workweek," provides:

An employee's workweek is a fixed and regularly recurring period of 168 hours—seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. . . Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him.

29 C.F.R. § 778.105.

[7]    The requirement that the employee enjoy private quarters in a homelike environment is not expressly found in the regulation, but it runs through the guidance. Dep't of Labor, Exclusion of Sleep Time from Hours Worked by Domestic Service Employees 3 (Apr. 25, 2016) ("**2016 Bulletin**") ("a living

10

(3) if interruptions occurred, employees in fact got at least five hours of sleep during the scheduled sleeping period;
(4) employees are in fact compensated for any interruptions in sleep; and
(5) no more than eight hours of sleep time is deducted for each full 24-hour on-duty period.

1988 Memo, at *4.

### c.     The 2016 Bulletin

In 2016, the WHD stated that the requirement that the employer and employee enter an agreement to exclude sleep time "is not burdensome, because an agreement can be implied by the parties' conduct." Dep't of Labor, Exclusion of Sleep Time from Hours Worked by Domestic Service Employees 7 (Apr. 25, 2016) ("**2016 Bulletin**"). The WHD explained that "the reasonable agreement should reflect the realities of the particular situation; sleep time may only reasonably be excluded, for example, if a home care employee regularly has the opportunity to sleep overnight, rather than if the employee is present to actively provide around-the-clock care." 2016 Bulletin 3.

The 2016 Bulletin also interpreted the term "uninterrupted night's sleep" in § 785.22 to mean "at least five consecutive hours of sleep." 2016 Bulletin 6. The WHD explained:

> this interpretation allows employers flexibility because it does not require that an employee have eight hours of uninterrupted time to consider the night 'uninterrupted' but reflects the reality that a worker who is not permitted at least five hours in a row of uninterrupted time cannot be said to have gotten a meaningful night's sleep.
> An employee can 'usually' get an uninterrupted night's sleep if an employer's interruptions that prevent her from getting five consecutive uninterrupted hours of sleep occur less than half the time. . . . In other words, interruptions to an employee's five consecutive hours of sleep

---

and sleeping space that is separate from the person receiving services . . . or any other employees"); 1988 Memo, at *3; 1981 Letter, at *2.

time by the employer that occur during half or more than half of the employee's shifts are too frequent to meet the requirement.

2016 Bulletin 6 (internal citations omitted).

## B.   Caselaw Interpreting Sleep-Time Exceptions in the Group Home Context

Cases asserting claims for unpaid sleep time brought by employees working in residential treatment facilities abound. Many of the employers have won on summary judgment because as a matter of law the agreement (often implied) not to compensate for sleep time was considered reasonable. *Hendricks v. Okla. Prod. Ctr. Grp. Homes*, 159 Fed. App'x 875 (10th Cir. 2005) (finding a reasonable agreement to exempt sleep time); *Braziel v. Tobosa Dev. Servs.*, 166 F.3d 1061, 1063 (10th Cir. 1999) (parties' implied agreement satisfied the FLSA); *Bouchard v. Reg'l. Governing Bd.*, 939 F.2d 1323, 1331 (8th Cir. 1991); *Sidell v. Residential CRF, Inc.*, No. 1:08-cv-1699-SEB-DML, 2010 WL 4723722, at *7 (S.D. Ind. 2010); *Ormsby v. C.O.F. Training Servs., Inc.*, 194 F. Supp. 2d 1177, 1189 (D. Kan. 2002); *Blackburn v. KS Elks*, 40 F. Supp. 2d 1270 (D. Kan. 1999); *but cf. Oliver v. Portside Care Cntr*, No. 6:10-cv-1106-Orl-31DAB, 2012 WL 72711 (M.D. Fla. Jan. 10, 2012) (denying summary judgment in light of disputes of fact); *Shannon v. Pleasant Valley Cmty. Living Arrangements*, Inc., 82 F. Supp. 2d 426, 432-33 (W.D. Pa. 2000) (denying summary judgment due to disputes of fact about whether the agreement was reasonable in practice); *Gay v. Extended Family Concepts*, 102 F. Supp. 2d 449, 457 (N.D. Ohio 2000) (dispute of fact remained as to whether parties agreed to exempt sleep time). Yet none of the cases cited by the parties have taken up the novel argument presented by the Plaintiffs that § 785.23 does not apply because the employees do not reside for an extended

12

period of time on their employers' premises when their seven-day shift spans two workweeks.

## C.    Whether Section 785.23 Applies

Because LTS do not reside permanently in Port Resources' facilities, in order for § 785.23 to apply, Port Resources must establish that the LTS reside at the facilities for an "extended period of time." *Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 199-200 (4th Cir. 2005) (the party seeking the benefit of § 785.23 bears the burden of proving that it applies). Port Resources argues that its sleep policy satisfies this criteria because the employees' shift runs for seven consecutive days and nights, they are on duty for more than eight hours every 24-hour period, and they sleep on the premises each night. Def.'s Mot. 5 (ECF No. 53). This, Port Resources contends, satisfies the requirement in the 1988 Memo that the employees reside on the premises for at least 120 hours.

The Plaintiffs rejoin that the 1988 Memo does not just require residing at the premises for 120 hours, but "at least 120 hours in a workweek." Pl.'s Mot. 19 (ECF No. 56). The 1988 Memo defined the term "workweek" because it had "caused some difficulty," and in doing so, it referred back to § 778.105 of the Code of Federal Regulations.[8] 1988 Memo, at *2. Section 778.105 provides: "once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him." 29 C.F.R. § 778.105. The Plaintiffs argue that an employer

---

[8]    " '[W]orkweek' - means seven consecutive 24-hour periods (29 C.F.R. § 778.105)." 1988 Memo, at *2.

cannot use one workweek (Sunday to Saturday) for overtime calculations and another workweek (Thursday to Thursday) for determining whether employees are on premises for an "extended period of time." Pl.'s Reply 3 (ECF No. 65).

Port Resources concedes that it has structured the workweek from Sunday to Saturday for purposes of payroll and overtime calculation. Def.'s Opp'n. 6 (ECF No. 62). The LTS seven-day shift is spread across two workweeks, with 40 hours worked Thursday to Saturday and 56 hours worked Sunday to Thursday (rather than 96 hours in one workweek, and zero in the next). Pl.'s Mot. 19. By structuring the workweeks in this fashion, Port Resources is able to reduce overtime hours significantly. But Port Resources contends that whether an employee spends an "extended period of time" on its premises does not need to be measured by the payroll workweek. Port Resources offers three types of arguments against the Plaintiffs' interpretation of Section 785.23 and the 1988 Memo—arguments based on the language of the 1988 Memo, caselaw, and standards of deference.

First, Port Resources argues that the reference to "workweek" in the 1988 Memo must be read in context. The 1988 Memo reads:

> Under circumstances where an employee does not maintain his or her permanent residence on the premises and does not otherwise reside on the premises 7 days a week, WH will consider an employee who sleeps in private quarters, in a homelike environment, to reside on the premises for an extended period of time within the meaning of IB 785.23 if the employee resides on the premises for a period of 120 hours in a workweek.
>
> WH is refining and restating the minimum conditions required to meet this rule. An employee will be found to reside on the premises for an extended period of time if:

>(1) the employee is on duty at the group home and is compensated for at least eight hours in each of five consecutive 24-hour periods; and
>
>(2) The employee sleeps on the premises for all sleep periods between the beginning and end of this 120-hour period.

1988 Memo at *2.

Port Resources argues that there is nothing in the 1988 Memo, or in any of the other WHD guidance, that says that a workweek has to correspond with the payroll workweek. This argument seems to miss the point of the Fair Labor Standards Act. Employers have to pay overtime for employees who work more than 40 hours in a "workweek." 29 U.S.C. § 207(a)(1). The term "workweek" is the FLSA's principal standard of measure. It delineates the period in which overtime compensation must be assessed. Section 778.105 allows employers to decide when they want the workweek to start, but once the workweek is determined, it is to remain fixed. In this case, Port Resources decided to measure its overtime compensation from Sunday through Saturday, and in so doing, it determined its "workweek" for purposes of the FLSA.

Port Resources also points out that in the 1988 Memo, the WHD only referred to "120 hours in a workweek" once and did not repeat that iteration in the subsequent paragraph where it referred only to "this 120-hour period." But the WHD specifically defined "workweek" by reference to § 778.105 and then specified that an "extended period of time" under § 785.23 is "a period of 120 hours in a workweek." 1988 Memo, at *2. The fact that the WHD did not repeat the phrase "120-hour period in a workweek" in the second paragraph, does not, as the Defendant contends, mean that it did not really mean to say "workweek" in the previous paragraph. The use of the

word *"this"* in the phrase "this 120-hour period" clearly refers to the previously mentioned "period of 120 hours in a workweek."

Port Resources' third and final text-based argument is that its employees fall within the language found in the first sentence "does not otherwise reside on the premises 7 days a week." It argues that because LTS "do 'otherwise reside on the premises 7 days a week,'" there is no need to get into the question of whether they fall within the category of employees who reside on the employer's premises for an "extended period of time." Def.'s Opp'n 7. This interpretation of the guidance also falls flat. In the first part of the first sentence of the section quoted above, the WHD was attempting to differentiate the employees in the "extended period of time" category from the employees who reside on their employers' premises permanently or seven days a week.[9] Under this construction, the WHD appears to be using "seven days a week" to mean every day of every week, as in, "I exercise seven days a week."[10] This commonly understood meaning would describe those employees who are at the employer's premises every day, but it would not extend to those with a shift structure that gives them seven days on duty and then seven days off.

For the above reasons, I disagree with the Defendant's text-based arguments that the WHD's use of the term "workweek" takes on a different meaning when

---

[9]     Permanent residence is not necessarily completely redundant to residing for seven days a week. The WHD must consider a multitude of employment scenarios. For example, a camp counselor who resides "seven days a week" at a camp over the summer does not necessarily "reside permanently" at the employer's premises.

[10]     *See also* The Beatles, Eight Days a Week (1964) ("Love you ev'ry day girl,/ Always on my mind./ One thing I can say girl,/ Love you all the time. . . . /Ain't got nothin' but love babe,/ Eight days a week").

16

determining whether an employee resides on the premises for extended periods of time.

Second, the Defendant cites multiple cases for the proposition that "an employee's shift may straddle two workweeks even if the purpose and result is to minimize overtime." Def.'s Opp'n 7 (citations omitted). The very argument contains a concession that such a shift is extending over two separate "workweeks." There is no question that an employer can chose to structure the workweek in such a way as to minimize overtime. *Abshire v. Redland Energy Services, LLC* 695 F.3d 792, 795-96 (8th Cir. 2012) (no FLSA violation where employer made a permanent change to the designation of an employee's workweek, but not his work schedule, so that fewer hours qualified as overtime). But that is a different matter from whether an employee resides on premises for a period of at least 120 hours in a workweek. The 1988 Memo talked in terms of whether an employee resides on the premises for "at least 120 hours in the workweek," not "at least 120 hours in the employee's work schedule" or "at least 120 hours in the employee's shift."

The Defendant does cite two cases that found that employees in similar group home settings resided for extended periods on their employers' premises and fell within the § 785.23 exemption for sleep-time. *See Shannon*, 82 F. Supp. 2d at 427 n.2, 431 (no dispute that seven-day shift spread over a two pay periods constituted an extended period of time); *Gay*, 102 F. Supp. 2d at 456 (same).[11] Like here, in both

---

[11]     Port Resources also cites to *Beaston v. Scotland School for Veterans' Children*, in which the court found that boarding school houseparents' seven-day shift constituted an extended period of time. 693 F. Supp. 234, 239 (M.D. Pa. 1988) (decided two months after the 1988 Memo was issued). The houseparents' total hours worked in that seven-day shift was only 42 hours, accounting for unpaid

*Shannon* and *Gay*, the seven-day shift spanned two pay periods to reduce overtime obligations. While the *Shannon* and *Gay* courts did find that § 785.23 applied, neither case addressed the argument raised here by the Plaintiffs, and the cases therefore are of little help. With no analysis from any court on either side of the question, the issue appears to be a matter of first impression.

Finally, the Defendant argues that if the WHD really meant what it said—that in order to be considered residing for an extended period of time under § 785.23,  the employee must reside at the employer's premises for at least 120 hours within a workweek—then I should accord it no deference because it would lead to absurd results. Port Resources points out that looking at workweeks in isolation would mean an employee who resided on her employer's premises for a ten-day shift would meet the "extended period" in the first workweek but fail to meet it in the second workweek. The Plaintiffs counter that the WHD avoids this outcome by using the article "a" rather than "the." Pl.'s Reply n.3. As long as the shift attaches to "a" workweek within which 120 hours were worked, the whole shift would be long enough to constitute an extended period of time. While I am not sure that the WHD intended to put so much weight on the article that precedes "workweek," I agree that the absurd results would be easily avoided by this interpretation.

Although it is a close question, I conclude that § 785.23 does not apply to the Plaintiffs in this case. The plain meaning of the 1988 Memo is that it will consider an

---

breaks, and this suggests that the shift covered just one pay period, although the court does not discuss the matter either way. *Id.* at 235. I read *Beaston* to say that a seven-day shift is adequate but without useful reference to the underlying pay periods.

employee to reside on the premises for an extended period of time within the meaning of § 785.23 "if the employee resides on the premises for a period of at least 120 hours in a workweek." 1988 Memo, at *2. The WHD presumably understood what it was doing when it used the term "workweek" and referred back to 29 C.F.R. § 778.105, its policy on determining the workweek. The 1988 Memo sets forth the WHD's enforcement interpretation, and the Supreme Court has stated that "[g]ood administration of the [FLSA] and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons." *Skidmore*, 323 U.S. at 140. The Defendant, who bears the burden of proving that § 785.23 applies, has failed to provide "very good reasons" for disregarding the guidance. Mindful of my obligation to narrowly construe exemptions to the FLSA, *Marzuq v. Cadete Enterprises, Inc.*, 807 F.3d 431, 438 (1st Cir. 2015), I find that the Defendant's attempt to define "workweek" one way for purposes of lowering its overtime payroll and another way for purposes of fitting within the sleep time exemption to overtime requirements smacks of having one's cake and eating it too.

### D.    Whether Section 785.22 Applies

The Plaintiffs argue that the Defendant cannot meet its burden of establishing that it fits within the exemption found at § 785.22 for employees who work over 24 hours because it cannot show that the LTS usually enjoyed an uninterrupted night's sleep. In its Reply and Opposition to the Plaintiffs' Motion for Summary Judgment, the Defendant states: "it is important to emphasize that Port Resources is relying on 785.23, not 785.22, in support of its sleep time policy." Def.'s Opp'n 2. The Defendant

bears the burden on establishing sleep time exceptions to the FLSA. *See Garofolo*, 405 F.3d at 200. Given this affirmative waiver of any reliance on § 785.22,[12] I conclude that the Plaintiffs are entitled to summary judgment on the issue of liability under the FLSA. The Defendant, having failed to establish that it fits within either of the sleep time exceptions, must be held to the general rule that sleep time is compensable.

### E.   Statute of Limitations

"Ordinary violations of the FLSA are subject to the general 2-year statute of limitations. To obtain the benefit of the 3-year exception, the [plaintiff] must prove that the employer's conduct was willful." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988); 29 U.S.C. § 255(a). A violation is willful where the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin*, 486 U.S. at 133. "[A]n employer does not act willfully even if it acts unreasonably in determining whether it is in compliance with the FLSA." *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 681 (1st Cir. 1998).

In order to find that the two year statute of limitations is applicable, there would need to be undisputed facts with regard to whether Port Resources' conduct in devising and implementing its sleep policy at least recklessly violated the FLSA. While the sleep policy on its face did not run afoul of the FLSA, the facts as to whether

---

[12]   On the undisputed facts before me, the LTS staff work at least forty-eight hours straight on the weekends when there is no four-hour break time. Section 785.22 covers employees who are on duty for 24 hours or more at a time. In order to prevail on summary judgment, the Plaintiffs would have had to demonstrate that the Defendant could not meet its burden of establishing entitlement to the § 785.22 exemption. On the record before me, I would have found that disputed material facts exist as to whether § 785.22 applies. But here, for reasons unknown to me, the Defendant has affirmatively conceded that it is not relying on § 785.22 to support its sleep policy.

the policy was implemented in violation of the FLSA are disputed. Accordingly, I cannot rule out the applicability of the three-year limitations period until further development of the facts. *See, e.g., McGuire v. Hillsborough County,* 511 F. Supp. 2d 1211, 1218 (M.D. Fl. 2007) (whether an employer committed a willful violation of FLSA, thereby extending the statute of limitations to three years is a jury question); *Cacchione v. Erie Technological Products, Inc.*, 526 F. Supp. 272, 275 (W.D. Pa. 1981) (whether violation of FLSA was willful is a question of fact).

## II.    Maine Law Claims

Count Two alleges a breach of the Maine Payment Wage Law, and Count Three alleges a breach of the Maine Minimum Wage Law. The Defendant concedes that the issue of sleep time for employees residing on their employer's premises has not been addressed by Maine Court, and it further concedes that Maine looks to analogous federal law for guidance on undefined terms. Def.'s Mot. 12 (citing *Gordon v. Maine Cent. R.R.*, 657 A.2d 785, 786 (Me. 1995) ("When, as here, a term is not defined in either the relevant statutory provisions or in prior decisions of this court, Maine Courts may look to analogous federal statutes, regulations, and case law for guidance.").  In view of my rulings under the FLSA, and in light of the Defendant's acknowledgment that Maine is likely to follow federal law on the issue, I find that summary judgment for Giguere is also appropriate on the Giguere's Maine law claims.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's motion for summary judgment and **GRANTS** the Plaintiffs' motion for summary judgment.


SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 27th day of April, 2018.