**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE**

DAVID GIGUERE,                                              Civil Action No. 2:16-cv-00058-NT
on his own behalf and
on behalf of all others similarly situated,

      Plaintiff,

v.

PORT RESOURCES INC.

      Defendant.

---

**PLAINTIFFS' PRETRIAL MEMORANDUM**

---

Pursuant to the Court's order dated June 13, 2018, Plaintiff David Giguere, on his own behalf and on behalf of all other opt-in plaintiffs, respectfully submits the following Pretrial Memorandum. As Plaintiff's Motion for Summary Judgment was granted on April 27, 2018 (Dkt. # 66), the remaining legal and factual issues in dispute are limited.

**I.     Facts.**

Defendant Port Resources, Inc. ("Port Resources") provides housing and services to adults with developmental disabilities. In approximately 2012, Port Resources developed and implemented a sleep time policy whereby Direct Care Professionals – Long Term Staff (known as "LTS"s) would work a seven days on, seven days off shift with a second LTS, going from Thursday to the following Thursday. Under the policy as written, the LTSs would receive four breaks of four hours each on four of the seven days she was scheduled, and would not be paid for eight hours per day of sleep time. Payroll was intentionally organized in such a manner so as to minimize overtime pay, with the pay week such that LTSs were paid on a Sunday to Sunday workweek. This meant that LTSs would be paid for Thursday to Sunday in one week

1

(approximately 40 hours of non-sleep work time) and Monday to Thursday in the second week (approximately 56 hours of non-sleep work time). In the policy as written, LTSs were to be paid for interruptions to their sleep caused by the consumer under their care, and would be paid for the entire night if they were unable to get at least 5 hours of sleep in a given night.

In developing and implementing this system, Port Resources used a 2009 edition of the ANCOR (American Network of Community Options and Resources) Wage and Hour Handbook and its references to a 1988 Memorandum issued by the Department of Labor's Wage and Hour Division. Port Resources also looked to 29 C.F.R. § 785.23 to avoid paying for the LTS' sleep time.

§ 785.23 is designed for "live-in" employees who reside at their employer's worksite on a long-term basis. It requires that the employee must have reasonable time to eat, sleep, entertain and enjoy periods of complete freedom from all duties. It further states that the agreement upon which the determination as to which hours are "work" and which are "sleep" must "take into consideration all of the pertinent facts."

This Court determined that Port Resources' plan as written hit all the checkboxes of § 785.23.[1] However, in application Port Resources sought to minimize and disregard work completed by the LTSs by at least recklessly violating the FLSA in their attempt to avoid paying overtime. Port Resources did so in two ways: (i) first, by splitting the workweek such that the "workweek" for the purposes of § 785.23 was distinct from the LTSs' "payweek;" and (ii) second, by not following the terms of the policy in practice with the LTSs.

First, and as discussed extensively in the Court's April 27, 2018 Order, Port Resources failed to follow the requirements of § 785.23 by splitting the .23 "workweek" and the LTS'

"payweek" to minimize overtime. This tweak to the sleep time policy was developed solely by Port Resources – they consulted no attorney, nor was this particular policy included in the guidance provided by the ANCOR handbook. This was a direct and intentional attempt to avoid paying overtime – Port Resources took a regulation designed to save itself money and pushed just a little bit further without legal support or guidance from any other institution. Port Resources knew that overtime was in play, and took a risky position above that suggested by the ANCOR handbook without consulting an attorney. This was plainly a willful, and at least a reckless, violation of the FLSA.

Second, Port Resources' actual implementation of the § 785.23 agreement was at least a reckless violation of the FLSA. Contravening the terms of the written sleep time policy and the agreements underlying it, Port Resources, *inter alia*,: (i) actively discouraged LTSs from reporting overnight interruptions; (ii) failing to properly account for interruptions to the LTSs' sleep; (iii) overly narrowly defining what was a compensable overnight interruption; (iv) failed to take into account that many LTSs' overnight hours were "work" and not sleep as required by § 785.23; and (v) imposing significant responsibilities on the LTSs during their overnight "free" time. These actions show that Port Resources' "sleep time policy" was nothing more than a sham attempt to avoid its overtime obligations. Port Resources at least recklessly violated the FLSA in its implementation of its "sleep time policy."

Accordingly, Plaintiff is entitled to payment for all unpaid work hours at either straight time or the individual worker's overtime rate for three years prior to when each opt-in plaintiff joined the case. The named plaintiff, David Giguere, is also entitled a further three years of unpaid wages under Maine's state law statute of limitations. Plaintiff's estimate of the total damages, including liquidated damages, totals approximately $1.9 million. To this figure

Plaintiff will seek to add all attorneys' fees, costs and expenses pursuant to 29 U.S.C. § 216(b) and 26 M.R.S. §§ 626-A & 670.

## II.     Controverted Points of Law.

The principal question of fact remaining at issue is whether Defendant Port Resources, Inc.'s ("Port Resources") committed a willful or reckless violation of the FLSA in devising and / or implementing its sleep time policy. An employer acts "willfully" for the purposes of the FLSA if it knows or shows a reckless disregard for whether its conduct was prohibited by the FLSA. *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668 (1st Cir. 1998). Port Resources relies upon its consultation with the ANCOR handbook and another similar agency to itself to support its argument that it did not act recklessly or willfully in its violation of the FLSA. This reliance is misguided because, as noted above, the sleep time policy used by Port Resources was materially different from those implemented by other agencies and described in the ANCOR handbook. Further, as described above, the sleep time policy was not actually implemented as written.

Further, Plaintiffs are undeniably entitled to compensation at 1.5 times the regular rate for all hours over 40 that have not yet been paid. This is not a case of "gap time," but rather classic unpaid overtime. All working hours are fungible. *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 46 (1st Cir. 2013). ("This work was essentially indistinguishable from work performed during the employees' regularly scheduled hours and "[s]uch work from [their] standpoint [was] fungible.") Accordingly it makes no difference when Plaintiff or the opt-in's unpaid sleep hours took place or for what hours Port Resources has already paid, if those unpaid hours increase their overtime hours worked they are entitled to compensation at time and a half for all hours worked. *Id.* at 46 ("As to two of the four named plaintiffs, Rivers and McCarthy, the complaint alleges that they were regularly scheduled for forty-hour/week shifts. Any time that they worked during

4

meal breaks, before or after their shifts, and in training periods, would thus entitle them to overtime compensation.") The Plaintiffs also believe they are entitled to one hour of FLSA gap time every other week because until Port Resources has paid all straight wages owed under contract or state law it is essentially requiring the worker to kickback some of its overtime wages. This is a legitimate dispute, but a minor part of the damages.

### III.   Proposed Stipulations.

Plaintiff believes that the parties will be able to stipulate as to the unpaid sleep hours worked and the pay rates based on Defendants records. If there are still factual disputes regarding damages the Plaintiff suggests that the parties agree to have the court decide these because it would be overly complicated for a jury to do the math. The Plaintiffs are open to discussing stipulations of other evidentiary and factual matters at issue.

### IV.   Witnesses.

At present, Plaintiff intends on calling the following individuals: (i) Celia Schafer; (ii) Lindsay Gagne; (iii) Ryan Jarrell; (iv) Susan MacDonald; (v) Lee Southwick; (vi) Zu-Chyun Speaker; (vii) Deborah Dow; (viii) Cynthia Cookinham; and (ix) Long Cao

### V.   Juror Questionnaire.

Plaintiff does not have a proposed jury questionnaire.

### VI.   Documentary Evidence.

At present, Plaintiff intends to offer the following as exhibits at trial: (i) The ANCOR Handbook, Exhibit G to the deposition of Celia Schafer; (ii) Port Resources Sleep Time Agreement, Exhibit J to the deposition of Celia Schafer; (iii) Port Resources' employee handbook, exhibit E to the deposition of Celia Schafer; and (iv) Time worked and wage payment records.

Dated: July 3, 2018

Respectfully Submitted,

_/s/Andrew Schmidt_
Andrew Schmidt
Peter Mancuso
Andrew Schmidt Law, PLLC
97 India St.
Portland, Maine 04101
207-619-0884
Peter@MaineWorkerJustice.com
*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following counsel:

Graydon G. Stevens, Esq., BN 299
*Attorney for Port Resources, Inc.*

KELLY, REMMEL & ZIMMERMAN
53 Exchange Street
P.O. Box 597
Portland, Maine 04112
(207) 775-1020
gstevens@krz.com

Dated: July 3, 2018

   /s/Peter Mancuso
Peter Mancuso
Andrew Schmidt Law, PLLC
97 India St.
Portland, Maine 04101
207-619-0884
Peter@MaineWorkerJustice.com

*Attorneys for the Plaintiff*