IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

DAVID GIGUERE,  
on his own behalf and  
on behalf of all others similarly situated,

    Plaintiff,  
v.

PORT RESOURCES INC.

    Defendant.

Civil Action No. 2:16-cv-00058-NT

## PLAINTIFFS' TRIAL BRIEF

Port Resources, Inc. designed and for many years recklessly implemented a plan that deprived its workers of pay for all hours they worked, willfully and recklessly disregarding outside guidance in its interpretation and application of U.S. Department of Labor regulation 29 C.F.R. §785.23.[1] Port Resources' maneuvering sought to, and for years succeeded in, depriving Port Resources' Direct Service Professionals – Long Term Staff ("LTSs") of payment for overnight hours in which they served as human alarm clocks and all overtime to which they were entitled. On April 27, 2018, the Court granted summary judgment for Plaintiffs, ruling that Port Resources violated the Fair Labor Standards Act by failing to pay its workers for all hours worked because § 785.23 did not apply to exclude sleep time hours due to Port Resources' logistical gymnastics that defined the LTS' workweek in one way for calculating overtime and another way for complying with the requirements of § 785.23. Port Resources carefully studied the industry standards on sleep time, but then recklessly gambled on a novel scheme to reduce its labor costs even further. In doing so Port Resources, however, chose not to seek assistance from

---

[1] Port Resources disavowed reliance on § 785.22 in its summary judgment briefing.

1

any attorney or Department of Labor, likely because it believed its chances of being sued were so low.

Now this Court must determine if Port Resources acted willfully (knowing or recklessly disregarded its obligations under the FLSA) in violating the FLSA with regard to its sleep time plan. Further, Port Resources contends that it acted in good faith with regard to its sleep time plan and should not be required to pay liquidated damages as is typically required under the FLSA. Finally, Plaintiffs seek a proper calculation of damages, which includes payment for all overtime hours without kickbacks for unpaid "gap time" hours. The first two issues are questions of fact, whereas the third is a purely legal determination.

**I.      Statement of Expected Evidence.**

Port Resources' sleep time policy, described more fully in previous briefing, was developed primarily by Celia Schafer, Port Resources' director of human resources. In developing the policy, Ms. Schafer consulted with the 2009 edition of the American Network of Community Options and Resources ("ANCOR") Wage and Hour Handbook. However, neither Ms. Schafer nor anyone at Port Resources consulted with an attorney in their development of the sleep time plan. Furthermore, the evidence will show at trial that the part of Port Resources' sleep time plan that the Court specifically found to have violated the FLSA – Port Resources' staggered workweek – was not referenced or included in any way in the ANCOR handbook.

Moreover, Plaintiffs will show at trial that when the sleep time policy was executed by Port Resources' staff, it was done in a confused and haphazard manner that left many of the LTSs with differing interpretations of (i) their overnight responsibilities; (ii) when they were to report interruptions to their sleep for payment; and (iii) precisely how they were to report those interruptions. Further, multiple LTSs will testify to the fact that the very nature of their job meant

that they could never get a full night's sleep, which § 785.23 requires in order for an employer to exclude sleep time from "work" time.[2]

## II.     Argument

### A.     Port Resources knew or showed reckless disregard for whether its sleep time policy was prohibited by the FLSA.

29 U.S.C. § 255(a) states that an action under the FLSA shall be commenced within two years after the cause of action accrued except that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." The plaintiff employee has the burden of establishing that the defendant employer's conduct was willful, and can do so by showing that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). This is a question of fact rather than one of law. *McGuire v. Hillsborough County*, 511 F. Supp. 2d 1211, 1218 (M.D. Fl. 2007).

Here it is particularly important to frame the issue of willfulness correctly. Plaintiffs are not now asserting that Port Resources willfully or recklessly disregarded the FLSA with the sleep time plan itself.[3] Rather, at issue is Port Resources' *mens rea* with regard to two principle issues – the decision to implement its sleep time plan across two pay weeks and its actual execution of its sleep time plan. Plaintiffs will show that when those points are considered together it will become clear that Port Resources got just greedy and took what may have been a legitimate, legal plan and pushed the envelope over the line to deprive the LTSs of their hard earned wages.

---

[2] "… Ordinarily he may engage in normal private pursuits and thus have **enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties** when he may leave the premises for purposes of his own." 29 C.F.R. § 785.23 (emphasis added).
[3] Plaintiffs do believe that the sleep time plan applied in this industry is a violation of the FLSA. However, for the purposes of this trial Plaintiffs assert only that the implementation across two pay weeks and its execution itself are at issue.

Plaintiffs will present evidence and testimony that Port Resources' violations of the FLSA are not simply unreasonable. Ironically, this is most clearly shown by Port Resources' work determining the legitimacy of the plan itself. Port Resources' efforts to investigate its sleep time plan are belied by the degree to which it took for granted its "right" to both implement the policy across two pay weeks and its haphazard execution of the plan. Admittedly the contours of § 785.23 are complicated, but what is not complicated is determining what is and isn't the guidance provided by ANCOR – the specific guidance that Port Resources relies upon to support its argument that it did not act willfully or in reckless disregard of the FLSA. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1280-81 (11th Cir. 2008) (rejecting employer's assertion that the complex and fact-intensive nature of the FLSA and its exemptions meant that its FLSA violations could not be willful).

Having studied the statutes and guidance so carefully, Port Resources knew exactly what the rest of the industry was doing and how to stay inside a USDOL safe harbor. Instead Port Resources thought it had come up with a solution to, as the court put it, have their cake and eat it too. At that point Port Resources knew it was taking a more aggressive stance than the industry and their competitors but didn't consult an attorney or Department of Labor to figure out why everyone, except Spurwink, avoided this gambit. *See Moon v. Kwon*, 248 F. Supp. 2d 201, 231-32 (S.D.N.Y. 2002) (finding the defendant's violations of the FLSA willful where they knew of federal and state minimum wage laws and consulted an attorney, yet violated those laws anyway).

Moreover, Plaintiffs will show that Port Resources' execution of its sleep time plan is further evidence that it willfully and/or recklessly disregarded its obligations under the FLSA. As willfulness is based upon the defendant employer's *mens rea*, the care, or lack thereof, Port

Resources took in executing its sleep time policy is certainly relevant to whether it took its obligations under the FLSA seriously. Specifically, Port Resources' failed to ensure uniform and proper implementation of the sleep time policy, which will be shown through the testimony of multiple LTSs who worked under that policy. Accordingly, regardless of the level of care Port Resources may or may not have put into writing its plan, this failure shows that in reality Port Resources was concerned only with reducing its labor costs and not with following the law.

### B. Port Resources did not act in good faith with regard to its sleep time policy sufficient to avoid liquidated damages.

Pursuant to 29 U.S.C. § 260, a court may, in its sound discretion, award no liquidated damages (or a portion thereof) if an employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing the act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260.[4] A finding of good faith requires a defendant employer to show that it "[took] active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999). Further, the employer must show that it had reasonable grounds for believing it was complying with the FLSA. 29 U.S.C. § 260. Port Resources cannot meet this burden.

Plaintiffs do not disagree that Port Resources took some steps to ascertain the dictates of the FLSA with regard to its sleep time policy. Port Resources consulted with the ANCOR handbook and another agency, Spurwink, in developing its sleep time policy. However, Plaintiffs will show at trial that Port Resources' consultation was incomplete, as none of those guides

---

[4] The good faith exception under 29 U.S.C. § 260 is distinct from the good faith exception outlined in 29 U.S.C. § 259. Under § 259, in order to avoid liquidated damages an employer must establish that the act or omission at issue was in good faith and in conformity with and reliance on a written administrative regulation, order, ruling, approval or interpretation of an agency of the United States. Port Resources has specifically disclaimed reliance on the good faith exception found in 29 U.S.C. § 259.

suggested or implemented a sleep time policy that straddled two pay weeks. Port Resources devoted time and effort into ascertaining the exact line suggested by ANCOR, decided to cross that line just a little bit so as to avoid paying a few hours overtime each week. Port Resources knew it was doing something novel but took no steps to consult with an attorney or with any state or federal labor department for assistance. *See McLaughlin v. Hogar San Jose, Inc.*, 865 F.2d 12 (1st Cir. 1989) (upholding a good faith finding when an unsophisticated employer sought the advice of the Puerto Rico Department of Labor but erroneously interpreted that advice). Port Resources may have acted in good faith in studying sleep time policy – but that only makes its aggressive and ultimately illegal implementation more egregious

Liquidated damages under the FLSA are designed to compensate wronged employees for the loss of the earned wages. *Marshall v. Brunner,* 668 F.2d 748, 753 (3d Cir.1982) ("Under the Act, liquidated damages are compensatory, not punitive in nature. Congress provided for liquidated damages to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due"), *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("We have previously held that the liquidated damages provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.") This fact goes hand in hand with the fact that wronged employees are traditionally not entitled to consequential damages caused by an employer's failure to pay all wages due under the FLSA. In short, absent liquidated damages the purposes of the FLSA are defeated for two reasons. First, a wronged employee remains worse off than if he had been paid correctly even when he wins a lawsuit establishing his employer's wrongful conduct. And second, an

employer remains better off having violated the FLSA, as it retained use of funds the lawsuit legally established should have been paid to the employee.

Although the court in very limited circumstances has the discretion to deny all or some that compensation under 29 U.S.C. § 260, it is the rare exception. *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2d Cir. 1999) ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception.")  And even when an employer meets this high burden to establish good faith, § 260 just gives the court the option to exercise its discretion to remove or lower the amount of damages – the court has under no obligation to do so. The FLSA isn't the internal revenue code where tax professionals are encouraged by professional standards to take the most favorable position with a reasonable legal basis. It is a remedial statute with workers' family food literally on the table.[5] This is not extraordinary situation where the Court should go out of its way to take away compensation owed to the employees, creating a windfall for the employer who, to this date years later, is keeping and investing the employees' earned wages to its benefit.

However, if the Court finds that Port Resources acted in good faith and denies Plaintiffs' request for liquidated damages, Plaintiffs would renew their request for pre- and post-judgment interest on all back wages owed. *See Secretary of Labor v. Daylight Dairy Products, Inc.*, 779 F.2d 784, 789-90 (1st Cir. 1985) (noting that interest should generally be allowed on a back pay award under the FLSA), *overruled on other grounds McLaughlin v. Richland Shoe Co.*, 486 U.S.

---

[5] It should be noted that the United States Supreme Court in dicta recently appeared to move away from well-settled standard that FLSA exemptions are narrowly construed. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018) ("But the Court rejects this [narrow construction] principle as a guide to interpreting the FLSA. Because the FLSA gives no textual indication that its exemptions should be construed narrowly, they should be given a fair reading.") Given this Court's own dicta on Summary Judgment mentioning but not relying on this standard, the Plaintiffs bring this to the Court's attention. Like on summary judgment it does not alter the analysis because the answer is the same under a "fair reading."

128 (1988), *see also Braverman v. Penobscot Shoe Co.*, 859 F. Supp. 596, 601 (D. Maine 1994) (permitting a demand for prejudgment interest in an ADEA claim).

      **C.    The proper calculation of damages requires paying for all unpaid hours without regard to "gap time."**

The LTSs are entitled to payment for all hours worked, which this Court decided in its April 27, 2018 order includes all sleep time hours. This includes all straight time prior to their overtime. Port Resources has asserted that the FLSA does not compel the payment of otherwise unpaid hours under the 40 hour overtime threshold, citing *Lundy v. Catholic Health System of Long Island*, 711 F.3d 106, 115 (2d Cir. 2013). The Fourth Circuit and U.S. Department of Labor take the opposite position. *See Monahan v. Cnty. of Chesterfield,* 95 F.3d 1263 (4th Cir.1996), 29 C.F.R. § 778.315. Until the Plaintiffs are paid for all of the wages owed under state law and contract law, they have not been paid their FLSA overtime. *Lundy* is wrongly decided, and unfortunately attorneys in recent cases have failed to ground their arguments in the well-settled FLSA kick-back jurisprudence leaving the gap-time regulation to seem ultra vires.

29 C.F.R. § 778.315 states that all hours an employee works for an employer must be counted when determining overtime compensation and explicitly notes that "[t]his extra compensation for excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all straight time compensation due him for the non-overtime hours under this contract (express or implied) or under any applicable statute have been paid." The Fourth Circuit clarified in *Monahan* that the proper application of § 778.315 required analysis of the terms of the parties' express or implied employment agreement and resolved gap time issues turning on whether that agreement and the payment included therein was designed to take into

8

account all hours under forty. *Monahan*, 95 F.3d at 1273-74. Accordingly, the employment agreement and not the federal minimum wage are the focal point for analysis.[6]

Here, the parties' employment agreement was simple – LTSs were paid by the hour and certainly not on a salary basis that was intended to account for all hours worked. And this Court has already determined that the sleep time was work time under state law. The Fourth Circuit's decision in *Monahan* acknowledges that paying overtime while requiring the workers to forgo some hours of pay is a kick-back – just as if the employer deducted money in overtime weeks for tools. 29 CFR § 531.35 ("if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act"), *see U.S. v. Gordon*, 852 F. 3d 126, 139 fn. 14 (1st Cir. 2017) (noting that "the Fair Labor Standards Act (FLSA) specifies that wages must be paid 'free and clear.' 29 C.F.R. § 531.35. Thus, such expenses as uniforms and, in some cases, even travel, cannot be charged to the employee, if such expenses would drive the employee's pay below minimum wage").

This is best illustrated with an example: if an employee has an agreed upon rate of pay of $20 per hour and works 50 hours, the correct total pay is $1100 - $800 straight time ($20 x 40 hours of work) and $300 overtime ($30 x 10 hours of overtime). But under Port Resources' argument, if that employee had only been paid for 37 hours and had 13 hours of unpaid work (meaning he was paid a total of $740), that employee would only be entitled to an additional $300, for a total pay of $1040. Port Resources argues that 3 hours are non-compensable "gap

---

[6] Although these references relate to weeks in which the employee worked overtime when all unpaid hours are accounted for, Plaintiffs firmly believe this logic applies with equal force to those relatively few weeks in which the LTSs did not in fact work overtime hours.

time" because the $740 already paid to the employee exceeds the federal minimum wage for those hours worked ($7.25 x 37 = $268.25). Although it is true that private plaintiffs could look to enforce their rights in state court, the USDOL could not. Under the *Lundy* analysis there is no way for the USDOL to stop an employer from vitiating the FLSA overtime requirement by writing a premium check for hours 40 but then essentially requiring a kickback by short changing the pay for the first 40 hours.

### III.   Conclusion.

Plaintiffs will satisfy their burden at trial to show that Port Resources acted willfully and/or recklessly concerning their violation of the FLSA. Port Resources cannot show that it acted in good faith and must be required to pay liquidated damages as dictated by the FLSA. Finally, the proper measure of damages should require the LTSs to be paid for all unpaid hours without regard to kickpack "gap" time.

Dated: August 1, 2018

Respectfully Submitted,

　　/s/Peter Mancuso
Peter Mancuso
Andrew Schmidt
Andrew Schmidt Law, PLLC
97 India St.
Portland, Maine 04101
207-619-0884
Peter@MaineWorkerJustice.com
*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following counsel:

Graydon G. Stevens, Esq., BN 299
*Attorney for Port Resources, Inc.*

KELLY, REMMEL & ZIMMERMAN
53 Exchange Street
P.O. Box 597
Portland, Maine 04112
(207) 775-1020
gstevens@krz.com

Dated: August 1, 2018

    /s/Peter Mancuso
Peter Mancuso
Andrew Schmidt Law, PLLC
97 India St.
Portland, Maine 04101
207-619-0884
Peter@MaineWorkerJustice.com

*Attorneys for the Plaintiff*